JUDGE BATTS

Donald J. Kennedy
William H. Sloane
Laura Anne Reeds
Carter Ledyard & Milburn LLP
Two Wall Street
New York, New York 10005-2072
Tel. No. 212-238-8707
Attorneys for Plaintiff
Alumina & Bauxite Company Ltd.

07 CIV 9647

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

Alumina & Bauxite Company Ltd.,

                       Plaintiff,

              - against -

Oldendorff Carriers GmbH & Co. KG, Mercury
Shipping & Trading Ltd., Dmitry Osipov, Natica
Shipping Ltd., John Does 1-5 (fictitious) and John
Does, Inc. 1-5 (fictitious),

                      Defendants.
----------------------------------------------------------------X



07 Civ.

ECF CASE

**VERIFIED COMPLAINT**

Plaintiff Alumina & Bauxite Company Ltd., by and through its attorneys, Carter Ledyard & Milburn LLP, as and for its Verified Complaint against the Defendants, Oldendorff Carriers GmbH & Co. KG, Mercury Shipping & Trading Ltd., Dmitry Osipov and Natica Shipping Ltd., alleges:

### INTRODUCTION

This is an action for breach of four maritime contracts, to pierce the corporate veil for the purpose of imposing damages in excess of $450 million for such breach, to set

6241935.5

aside certain fraudulent conveyances, to impose joint and several liability as joint venturers and partners upon certain parties for breach of the four maritime contracts, and for a conspiracy to do unlawful acts.

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

<u>Parties</u>

2. At all times material to this action, Plaintiff Alumina & Bauxite Company Ltd. ("Albaco") was, and still is, a foreign company duly organized and operating under the laws of the British Virgin Islands. Albaco is in the business trading bauxite. Albaco is a subsidiary of United Company Rusal ("Rusal"), a legal entity organized and existing under the laws of Jersey. Headquartered in Moscow, Ruscal is one of the largest producers of primary aluminum in the world.

3. Defendant Mercury Shipping & Trading Ltd. ("Mercury"), upon information and belief, is a corporation organized under, and existing by virtue of laws of Saint Vincent and the Grenadines. The registered office of Mercury is Trust House 112, Bonadie Street, Kingstown, Saint Vincent, which is the same address as Mercury's statutory Registered Agent, St. Vincent Trust Services Limited. Mercury is only authorized to issue "Bearer Shares" and has an authorized capital of $10,000. Upon information and belief Mercury's principal place of business is at Willy-Brandt-Alle 6, D-23554, Lubeck, Germany.

4. Defendant Oldendorff Carriers GmbH & Co. KG ("Oldendorff") is a legal entity organized and existing under the laws of Germany, and also has an office and principal place of business at Willy-Brandt-Alle 6, D-23554, Lubeck, Germany.

Oldendorff owns and/or controls vessels that are available for the carriage of bulk cargo such as bauxite. Oldendorff is one of the largest shipowners in Germany and it has been reported in the trade press that Oldendorff is "cashing in" and has sold fifteen (15) vessels this year.

5. Defendant Dmitry Osipov ("Osipov") is a citizen of a foreign country, is a Director of Mercury, and upon information and belief, maintains an office at 24-25, 21-B Kuusinen Street, 125252 Moscow Russia.

6. Defendant Natica Shipping, Ltd. ("Natica") upon information and belief is a legal entity organized and existing under the laws of Cyprus with registered office at 20 Omirou Street, Ayios Nicholas, 3720 Limassol, Cyprus and a principal place of business in Moscow, Russia. Upon information and belief, Dmitry Osipov, also known as "Dima" is the Managing Director of Natica. Natica also maintains an office at 24-25, 21-B Kuusinen Street, 125252 Moscow Russia.

7. The individual defendants sued herein as John Does - 1-5 to account for those individuals' actual identity once known.

8. The corporate defendants sued herein as John Does, Inc. - 1-5 to account for those corporations' actual identity once known.

FIRST CAUSE OF ACTION (BREACH OF CONTRACT)

9. Albaco, as Charterer, entered into four charter parties or contracts of affreightment ("COAs") with Mercury, as owner, copies of which are attached respectively as Exhibits 1, 2, 3 and 4. The major terms of each of the four Albaco/Mercury COAs are set forth below:

6241935.5

3

a) <u>C/P dated 17 July 2003</u>: (Ex. 1)
   Voyage:              Conakry to Guinea to Dneprobugskiy or Poti
   Cargo Quantity:      Up to 3,000,000 M/T per annum
   Initial Period:      2005 - 2011
   Initial Freight Rate: $14.50 Dneprobugskiy Poti
                        $13.50 per MT Dneprobugskiy
                        $14.50 per MT Poti

b) <u>C/P dated 7 August 2003</u>: (Ex. 2)
   Voyage:              Conakry, Guinea to St. Petersburg or Murmansk
   Cargo Quantity:      Up to 350,000 M/T to 500,000 MT per annum
                        (2004-2008)
   Initial Period:      2003 - 2008
   Initial Freight Rate: $19.0 per MT

c) <u>C/P dated 7 December 2005</u>: (Ex. 3)
   Voyage:              New Amsterdam, Guyana to Dneprobugskiy
                        or Constanza
   Cargo Quantity:      2007       - 400,000/600,000 M/T
                        2008/9     - 800,000/1,400,000 M/T
                        2010 -     800,000/1,500,000 M/T
   Initial Period:      2006 - 2010
   Initial Freight Rate: $26.25 to $27.25 depending upon discharge port

d) <u>C/P dated 6 September 2006</u>: (Ex. 4)
   Voyage:              Weipa, Australia to Dneprobugskiy
                        or Constanza
   Cargo Quantity:      720,000/840,000 M/T
   Period:              2007
   Initial Freight Rate: $39.75 MT

10. Pursuant to each of the four Albaco/Mercury COAs, Mercury was to provide vessels to Albaco for the carriage of a fixed quantity of bauxite in bulk over a period of time between designated ports as described above.

11. Each of the four Albaco/Mercury COAs contains an arbitration clause (either Rider Clauses 28 or 29) which provides that it shall be governed by English law and that any dispute is to be referred to arbitration in London.

12. Mercury has breached and repudiated each of the four Albaco/Mercury COAs. On October 25, 2007, the broker, Natica, forwarded to Albaco an email purportedly from Mercury which provided in part:

> . . .
> Under the circumstances, we have no other solution,
> than to stop all further shipments under this COA
> and other COAs with RUSAL's controlled
> companies as from today 25th October, 2007.
> . . .

13. The contractual rate in the four Albaco/Mercury COAs are not the same, but the current market freight rates substantially exceed the freight rates in each of COAs. Due to Mercury's breach of the four Albaco/Mercury COAs, Albaco will have to seek replacement vessels in the open market to transport its bauxite at freight rates substantially higher than the freight rates in the four Albaco/Mercury COAs.

14. As a direct result of Mercury's breach of contract, Albaco has incurred or will incur damages arising out of Mercury's breach of the four COAs in the approximate amount of $426,025,000.

15. However, Mercury has failed and refused to satisfy the amount due to Plaintiff as a result of Mercury's breach of the four Albaco/Mercury COAs.

16. Costs and attorneys' fees are routinely awarded to the prevailing party under English Arbitration Law. As best as can now be estimated, Plaintiff expects to recover the following amounts in arbitration.

|   |   |   |
|---|---|---|
| A. | On the principal claim: | $426,025,000 |
| B. | 3 years interest @ 6% per annum | $81,377,591 |
| C. | Attorneys' fees and costs: | $ 2,000,000 |
|   | **Total:** | $509,402,591 |

6241935.5

## SECOND CAUSE OF ACTION (VEIL PIERCING)

17.     Plaintiff repeats and realleges the allegation in paragraphs 1 through 16 of the Complaint as fully set forth herein.

18.     On its website Oldendorff promotes itself as the "United Family" of Oldendorff Carriers. Mercury has been a valued member of the Oldendorff "United Family" when it was making money but now, when the market moved against them, Oldendorff contends that Mercury is an orphan.

19.     Upon information and belief defendant Oldendorff totally dominated and controlled Mercury, commingled funds and caused funds to be transferred between corporations without appropriate documentation, failed to observe corporate formalities, failed to maintain an arms length relationship with Mercury, and failed to adequately capitalize Mercury. As a result, Mercury lacks an individual identity apart from Oldendorff and has operated as a single economic entity serving the business of Oldendorff.

20.     On October 25, 2007 Peter Twiss, President of Oldendorff, denied in writing that Mercury was a subsidiary or affiliate of Oldendorff.

(a)    Commingled Funds

21.    Oldendorff and the Bauxite Company of Guyana, Inc. (BCGI), a subsidiary of Rusal, entered into a Contract of Affreightment dated 21 October 2005 ("BCGI COA") which is being performed. Pursuant to that contract, Oldendorff routinely issued invoices on **Oldendorff** letterhead which provides freight payments to be made to Mercury. For example, pursuant to the BCGI COA, Oldendorff issued a freight invoice for the M/V Power Ranger No. 86595, dated 8 October 2007 to BCGI (Ex. 5) with the following remittance instructions to:

> **Benef. Name: Mercury Shipping & Trading, Ltd.**
> Benef. A/C No: 0385-40-06-020806
> Benef. Bank name, County: Bank of Cyprus, Limassol, Cyprus
> Swift, ABA Transit no, etc: BCYPCY2N 030.

One of the four Albaco/Mercury COAs that Mercury breached is dated 17 July 2003 and pursuant to that COA Mercury issued a freight invoice for the M/V Med Dignity No. 305/07 dated 10 October 2007 to Albaco (Ex. 6) with remittance instructions to:

> Bank of Cyprus
> 121, Georgiou Griva Digheire Avenue
> CY-34699, Limassol, Cyprus
> Swift BCYPCY2N 030
> Account number: 0385-40-06-020806
> **Beneficiary: Mercury Shipping & Trading, Ltd.**

22.    Payment due under contracts with different Oldendorff controlled entities were made to the same bank and into the same account in Cyprus. Oldendorff has commingled its funds with Mercury's funds, as evidenced by the fact that freight due Oldendorff was deposited into a Mercury bank account on more than one occasion.

(b)     Actual Domination and Control

23.     Upon information and belief, the owner of Oldendorff is Henning Oldendorff, Peter Twiss is President, and they both live in Germany. In connection with discussing the settlement of certain disputes between Albaco, as charterer and Mercury, as owner, arising out of the COA dated 17 July 2003, Albaco was advised by Dmitry Osipov, Mercury's Managing Director, in November 2006 that:

> ...
> I have duly discussed chrts' last kind letter with the owner
> and the president during my last visit to Germany, so
> received their full authority to negotiate the solution with
> the chrts.
> ...

24.     Oldendorff's owner, Henning Oldendorff and its President Peter Twiss dominated and controlled Mercury and exercised their actual domination in settling claims on behalf of Mercury.

25.     In correspondence from the broker, Natica, to Rusal relating to the COA dated 7 December 2005, Natica considers Oldendorff and Mercury to be one and the same. For example, in an e-mail dated April 20, 2007, Natica states in part:

"It looks like US$ 53.50 pmt (US$ 56.50 pmt less US$ 3.00 pmt for transshipment) from **Oldendorff/Mercury** is far better rate, especially, that BCGI will not be paying any demurrage at loading.

Please advise, as the market is moving up, so we won't be able to keep **Oldendorff** committed for a long period." (Emphasis added)

26. Copies of documentation and correspondence relating to performance of the four Albaco/Mercury COAs were sent to "**Oldendorff Contracts. <contracts@oldendorff.com>**" as evidenced by the attached M/V Med Dignity freight invoice (Ex. 6) discussed above.

27. Laytime calculations for M/V Cozumel Cement were prepared pursuant to the Albaco/Mercury COA dated 17 July 2003 and were presented for payment showing the Owners as **Oldendorff** (Ex. 7).

28. Notices of readiness (NOR) indicating a particular vessel's availability for loading or discharging pursuant to one or more of the Albaco/Mercury COAs were tendered on behalf of **Oldendorff** (Ex. 8).

29. Oldendorff owned or controlled vessels including but not limited to the M/V Maria **Oldendorff**, M/V IMME **Oldendorff** and the M/V Max **Oldendorff** performed voyages pursuant to one or more of the four Albaco/Mercury COAs.

30. In addition, over the past several years, millions of dollars have been siphoned from Mercury and transferred to Oldendorff or related entities which it controls outside of Germany. The funds siphoned from Mercury have not been repaid.

31. As a result of these actions, Mercury was rendered unable to meet its contractual obligations to Albaco.

32. Oldendorff used Mercury to capture large profits and then to insulate itself from liability when it was to Oldendorff's advantage to walk away from its contractual commitments when the market rose and there were better profit opportunities elsewhere.

33.    As a result of the foregoing course of conduct, the corporate veil should be pierced and Oldendorff should be held liable under the four Albaco/Mercury COAs as the alter-ego of Mercury.

### THIRD CAUSE OF ACTION (FRAUDULENT CONVEYANCE)

34.    Plaintiff repeats and realleges the allegations in Paragraphs 1 through 33 of this Complaint as is fully set forth herein.

35.    During the term of the four Albaco/Mercury COAs, substantial funds were siphoned from defendant Mercury and transferred to John Does 1-5 and John Does, Inc. 1-5.

36.    Such transfers were made with the intent of allowing Mercury to avoid its debts, contractual obligation, and duties to Albaco under the four Albaco/Mercury COAs and Mercury could not meet its debts when they came due.

37.    In addition, or in the alternative, such transfers were made without providing reasonably equivalent value to Mercury, which was either insolvent at the time or was rendered insolvent by such transfers.

38.    Based on the forgoing course of conduct, such transfers were fraudulent as to Albaco. Accordingly, such transfers should be voided as to Albaco and Albaco should be awarded damages against those individuals or entities to whom such transfers were made in the amount of Albaco's damages for the breach and wrongful repudiation of the four Albaco/Mercury COAs.

## FOURTH CAUSE OF ACTION (JOINT VENTURES CLAIM)

39. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. Mercury and Natica are part of the "United Family" of companies of Oldendorff.

41. Dmitry Osipov ("Osipov") is the principal of Mercury and Natica. He also is the Director of Mercury.

42. Oldendorff, Osipov and Natica were jointly involved in the formation and capitalization of Mercury. They knew that at the time that Mercury was formed, it was undercapitalized with an investment of US $10,000.

43. Oldendorff, Mercury, Osipov and Natica entered into an agreement to carry out the four Albaco/Mercury COAs for a profit to be shared among them.

44. Oldendorff, Mercury, Osipov and Natica jointly negotiated the four Albaco/Mercury COAs at issue in this lawsuit. Oldendorff, Mercury, Osipov and Natica, also jointly negotiated the COA between BCGI and Oldendorff. At the time, Osipov did not disclose that he was acting jointly for Oldendorff, Mercury and Natica.

45. Mercury routinely provided Oldendorff with information regarding the performance and status of the four Albaco/Mercury COAs at issue.

46. Oldendorff, Mercury, Osipov and Natica, jointly repudiated the four Albaco/Mercury Charter Parties on October 25, 2007.

47. Mercury and Oldendorff jointly participated in the performance of the four Albaco/Mercury COAs.

48. Mercury and Oldendorff regularly used the same ships to carry out their obligations under the four Albaco/Mercury COAs.

49. Mercury regularly used ships owned or controlled by Oldendorff to carry out its obligations under the four Albaco/Mercury COAs.

50. Oldendorff, Mercury, Osipov and Natica, shared the receipts and profits in connection with the transactions related to the four Albaco/Mercury COAs and the COA between BCGI and Oldendorff.

51. The proceeds collected in connection with the four Albaco/Mercury COAs and the COA with BCGI was jointly collected by Oldendorff, Mercury, Osipov and Natica.

52. Oldendorff, Mercury, Osipov and Natica intermingled funds, and funds were caused to be transferred between the companies without appropriate documentation.

53. Oldendorff, Mercury, Osipov and Natica did not maintain an arms-length relationship among themselves.

54. Oldendorff, Mercury, Osipov and Natica have acted as a single entity in connection with four Albaco/Mercury COAs and the COA involving BCGI.

55. Oldendorff routinely issued invoices on Oldendorff letterhead which provided for payment to be made to Mercury's bank account as beneficiary.

56. Oldendorff routinely transferred funds to a bank account in the name of Mercury in connection with the work and services performed by Oldendorff.

57. Oldendorff, Mercury, Osipov and Natica were jointly involved in negotiating disputes arising under the four Albaco/Mercury COAs. For example, they

jointly negotiated settlement of a dispute between Albaco and Mercury arising from the COA dated 17 July 2003.

58. In addition, over the past several years, millions of dollars have been siphoned from Mercury and transferred to Oldendorff or entities which it controls outside of Germany.

59. Oldendorff, Mercury, Osipov and Natica agreed to carry on an enterprise for profit related to four Albaco/Mercury COAs and the COA with BCGI.

60. Oldendorff, Mercury, Osipov and Natica intended to be joint venturers.

61. Oldendorff, Mercury, Osipov and Natica made a contribution of property, financing, skill, knowledge, or effort to the enterprise.

62. Oldendorff, Mercury, Osipov and Natica share in the profits and losses from the joint enterprise.

63. Oldendorff, Mercury, Osipov and Natica each had control over the venture.

64. Oldendorff, Mercury, Osipov and Natica are joint venturers, and they failed to perform the four Albaco/Mercury COAs.

65. Oldendorff, Mercury, Osipov and Natica's course of dealings and course of performance establish that they acted as a joint venture.

66. As a result of the foregoing conduct, Oldendorff, Mercury, Osipov and Natica are jointly and severally liable as joint venturers to Plaintiff for breach of the four Albaco/Mercury COAs.

## FIFTH CAUSE OF ACTION (PARTNERSHIP BY ESTOPPEL)

67. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 66 of this Complaint as if fully set froth herein.

68. Oldendorff represented to Osipov, Mercury and Natica that it would be acting jointly with Mercury in carrying out the four Albaco/Mercury COAs.

69. Oldendorff also represented to Osipov, Mercury and Natica that Mercury had its backing in connection with performing its obligations under the four Albaco/Mercury COAs.

70. Osipov, Mercury and Natica represented to Plaintiff that Oldendorff and Mercury would be acting jointly in carrying out the four Albaco/Mercury COAs.

71. Osipov, Mercury and Natica represented to Plaintiff that Oldendorff and Mercury would be acting jointly in carrying out the four Albaco/Mercury COAs.

72. Oldendorff knew that Osipov would represent to Plaintiff that Oldendorff and Mercury would be acting jointly in carrying out the obligations under the four Albaco/Mercury COAs.

73. Oldendorff knew that Osipov and Mercury would represent to Plaintiff that Oldendorff was backing Mercury in carrying out the obligations under the four Albaco/Mercury COAs.

74. Oldendorff also knew that Osipov and Mercury would represent to Plaintiff that Mercury was subsidiary to Oldendorff.

75. Plaintiff understood, from representations made by Osipov, Mercury and Natica, that Oldendorff and Mercury were acting as partners in connection with the four Albaco/Mercury COAs.

76. Plaintiff gave credit to and reasonably relied on the representations made by Osipov, Mercury and Natica.

77. Plaintiff has been injured as a result of its reasonable reliance on representations made by Oldendorff, Osipov, Mercury and Natica.

78. Oldendorff and Mercury effectively held themselves out as being partners.

79. Oldendorff and Mercury, in equity and good conscience, should be estopped from denying that they entered into a partnership or joint venture in carry out and perform the four Albaco/Mercury COAs.

80. Oldendorff and Mercury's course of dealings and course of performance as well as the custom in the industry indicate that Oldendorff and Mercury acted as partners.

81. As a result of the foregoing, Oldendorff and Mercury are jointly and severally liable as partners to Plaintiff for breach of contract.

## SIXTH CAUSE OF ACTION (CONSPIRACY)

82. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 81 of this Complaint as if fully set froth herein.

83. During the existence of the COAs between Plaintiff and Mercury, defendants Oldendorff, Natica and Osipov, which dominate and control Mercury, and others combined and conspired among themselves to do unlawful acts or to do lawful acts by unlawful means.

84. The essence of their agreement was to interfere wrongfully with the COAs between Plaintiff and Mercury; and to fraudulently convey substantial sums of money from Mercury, rendering it unable to meet its obligations to Plaintiff under the COAs.

85.   In furtherance of the conspiracy, over the past several years, substantial funds were siphoned from Mercury and transferred to Oldendorff or entities which it controls outside of Germany.

86.   The funds siphoned from Mercury were not repaid.

87.   Because substantial funds were siphoned from Mercury and not repaid, Mercury was unable to meet its contractual obligations to Plaintiff.

88.   Plaintiff was injured by the foregoing conduct. Defendants should therefore be held liable for damages caused by their civil conspiracy.

89.   The Defendants Mercury, Oldendorff, Osipov and Natica cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

90.   Upon information and belief, Mercury, Oldendorff, Osipov and Natica have, or will have during the pendency of this action, tangible or intangible property within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, American Express Bank, Bank of America, N.A., Bank of New York, Barclay's Bank, Citibank, N.A., Deutsche Bank Trust Co. Americas, Fortis Bank, HSBC Bank USA, N.A., JPMorgan Chase Bank, N.A., La Salle Bank, N.A., Standard Chartered Bank, USB AG, U.S. Bank N.A., Wachovia Bank, N.A. and/or Wells Fargo Bank, N.A. which is due and owing to the Plaintiff.

91.   Albaco seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any property of

6241935.5

Mercury, Oldendorff, Osipov and Natica held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant, compelling them to arbitrate the claims asserted by Albaco, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.   That process in due form of law issue against the Defendant Mercury and Oldendorff, Osipov and Natica citing it to appear and answer under oath all the matters alleged in the Verified Complaint.

B.   That since the Defendant Mercury, Oldendorff. Osipov and Natica cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, American Express Bank, Bank of America, N.A., Bank of New York, Barclay's Bank, Citibank, N.A., Deutsche Bank Trust Co. Americas, Fortis, HSBC Bank USA, N.A., JPMorgan Chase Bank, N.A., La Salle Bank, N.A., Standard Chartered Bank, USB AG, U.S. Bank N.A., Wachovia Bank, N.A. and/or Wells Fargo Bank, N.A. which is due and owing to the Plaintiff, in the amount of $507,402.591 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Complaint.

6241935.5

C. That this Court recognize and confirm any arbitration award or judgment rendered on Plaintiff's claims herein as a Judgment of this Court.

D. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

E. That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: October 30, 2007
       New York, New York

                                    Carter Ledyard & Milburn LLP
                                    Attorneys for Plaintiff,
                                    Alumina & Bauxite Company Ltd.

                              By:   _____
                                    Donald J. Kennedy
                                    William H. Sloane
                                    Laura Anne Reeds
                                    Two Wall Street
                                    New York, New York  10005-2072
                                    Tel. 212-732-3200
                                    Fax: 212-732-3232

6241935.5

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NEW YORK  )

1. My name is Donald J. Kennedy.

2. I am over 18 years of age, of sound mind, capable of making this verification, and fully competent to testify to all matters stated herein.

3. I am a partner in the firm of Carter Ledyard & Milburn LLP, attorneys for the Plaintiff,

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

6241935.5

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated: New York, New York
October 30, 2007

_____
Donald J. Kennedy