## List of Exhibits

Exhibit 1                     C/P dated 17 July 2003

Exhibit 2                     C/P dated 7 August 2003

Exhibit 3                     C/P dated 7 December 2005

Exhibit 4                     C/P dated 6 September 2006

Exhibit 5                     Oldendorff freight invoice for the M/V Power Ranger
                              No. 86595 dated 8 October, 2007 issued to BCGI

Exhibit 6                     Mercury freight invoice for the M/V Med Dignity
                              No. 305/07 dated 10 October 2007 issued to Albaco

Exhibit 7                     Laytime calculations for M/V Cozumel Cement
                              pursuant to the Albaco/Mercury COA dated 17 July 2003

Exhibit 8                     Notices of readiness

6241935.5

# EXHIBIT 1

1. Shipbroker

CP/RT - 718/0703

RECOMMENDED     1st     **ORIGINAL**
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL
UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)
(To be used for trades for which no specially approved form is in force)
CODE NAME: "GENCON"                                    Part I

| | |
|---|---|
| | 2. Place and date   Moscow, 17th of July, 2003 |

**3. Owners/Place of business (Cl. 1)**

Mercury Shipping & Trading Ltd.,
St.Vincent & the Grenadines

**4. Charterers/Place of business (Cl. 1)**

Wainfleet C.e.S. Lda
Madeira, Portugal

**5. Vessel's name (Cl. 1)**

tonnage to be nominated  by Owners

**6. GT/NT (Cl.1)**

**7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)**

**8. Present position (Cl. 1)**

trading

**9. Expected ready to load (abt.) (Cl. 1)**

1st of January, 2005

**10. Loading port or place (Cl. 1)**

1 (one) safe berth port Conakry, Guinea

**11. Discharging port or place (Cl. 1)**

1 (one) safe berth/safe anchorage port Dneprobugskiy
or 1 (one) safe berth port Poti in Charterers' option

**12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)**

about 1.5 million metric tons of bauxite in bulk - Charterers' option upto maximum 3.0 million tons per annum
to be shipped over 2005-2011 years in lots of  35,000 metric tons up to 40,000 metric tons 10 % more or less
in Owners' option                      (See Rider Clause 34)

**13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)**

US$ 13.50 per metric ton FIOT for Dneprobugskiy
US$ 14.50 per metric ton FIOT for Poti

**14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)**

95 % of freight to be paid within 3 banking days
after signing/relaring Bills of Lading
(See Rider Clause 20)

**15. State if vessel's cargo handling gear shall not be used (Cl. 5)**

**16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)**

**17. Shippers/Place of business (Cl. 6)**

(a) Laytime for loading
See Rider Clause 26 (a)

**18. Agents (loading) (Cl. 6)**
Charterers'    (See Rider Clause 22)

(b) Laytime for discharging
See Rider Clause 26 (b)

**19. Agents (discharging) (Cl. 6)**
Charterers'    (See Rider Clause 22)

(c) Total laytime for loading and discharging

**20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)**
US$ 8,000 per day pro rata / DHD WTS both ends

**21. Cancelling date (Cl. 9)**
31st of December, 2011

**22. General Average to be adjusted at (Cl. 12)**
London

**23. Freight Tax (state if for the Owners' account (Cl .13 (c))**

**24. Brokerage commission and to whom payable (Cl. 15)**

**25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)**
English Law to apply, Arbitration in London
(See Rider Clause 29)

(a) State maximum amount for small claims/shortened arbitration (Cl. 19)

**26. Additional clauses covering special provisions, if agreed**
Rider Clauses 20-37 included in this Charter Party

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

PART II
"Gencon" Charter (As Revised 1922,1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel
named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number
of metric tons of deadweight capacity all told on summer loadline stated in Box
7, now in position as stated in Box 8 and expected ready to load under this
Charter Party about the date indicated in Box 9, and the party mentioned as the
Charterers in Box 4 that.

The said Vessel shall, as soon as her prior commitments have been completed,
proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as
she may safely get and lie always afloat, and there load a full and complete
cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and
responsibility) as stated in Box 12, which the Charterers bind themselves to
ship, and being so loaded the Vessel shall proceed to the discharging port(s) or
place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near
thereto as she may safely get and lie always afloat, and there deliver the cargo.

2. **Owners' Responsibility Clause**
The Owners are to be responsible for loss of or damage to the goods or for
delay in delivery of the goods only in case the loss, damage or delay has been
caused by personal want of due diligence on the part of the Owners or their
Manager to make the Vessel in all respects seaworthy and to secure that she is
properly manned, equipped and supplied, or by the personal act or default of
the Owners or their Manager.
And the Owners are not responsible for loss, damage or delay arising from any
other cause whatsoever, even from the neglect or default of the Master or crew
or some other person employed by the Owners on board or ashore for whose
acts they would, but for this Clause, be responsible, or from unseaworthiness of
the Vessel on loading or commencement of the voyage or at any time
whatsoever.

3. **Deviation Clause** ~~en route for bunkering and in case of emergency~~
The Vessel has liberty to call at any port or ports in any order, for any purpose,
to sail without pilots, to tow and/or assist Vessels in all situations, and also to
deviate for the purpose of saving life and/or property.

4. **Payment of Freight**
(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the
intaken quantity of cargo. see Rider Clause 20
(b) ~~Prepaid.~~ If according to Box 13 freight is to be paid on shipment, it shall be
deemed earned and non-returnable, Vessel and/or cargo lost or not lost.
Neither the Owners nor their agents shall be required to sign or endorse bills of
lading showing freight prepaid unless the freight due to the Owners has
actually been paid.
(c) ~~On delivery.~~ If according to Box 13 freight, or part thereof, is payable at
destination it shall not be deemed earned until the cargo is thus delivered.
Notwithstanding the provisions under (a), if freight or part thereof is payable on
delivery of the cargo the Charterers shall have the option of paying the freight
on delivered weight/quantity provided such option is declared before breaking
bulk and the weight/quantity can be ascertained by official weighing machine,
joint draft surveyor tally.
~~Cash for Vessel's ordinary disbursements at the port of loading to be advanced
by the Charterers, if required, at highest current rate of exchange, subject to
two (2) per cent to cover insurance and other expenses.~~

5. **Loading/Discharging**
(a) ~~Costs/Risks~~
The cargo shall be brought into the holds, loaded, stowed and/or trimmed,
tallied, lashed and/or secured and taken from the holds and discharged by the
Charterers, free of any risk, liability and expense whatsoever to the Owners.
~~The Charterers shall provide and lay all dunnage material as required for the
proper stowage and protection of the cargo on board, the Owners allowing the
use of all dunnage available on board. The Charterers shall be responsible for
and pay the cost of removing their dunnage after discharge of the cargo under
this Charter Party and time to count until dunnage has been removed.~~

(b) ~~Cargo Handling Gear~~
~~Unless the Vessel is gearless or unless it has been agreed between the parties
that the Vessel's gear shall not be used and stated as such in Box 15, the
Owners shall throughout the duration of loading/discharging give free use of
the Vessel's cargo handling gear and of sufficient motive power to operate all
such cargo handling gear. All such equipment to be in good working order.
Unless caused by negligence of the stevedores, time lost by breakdown of the
Vessel's cargo handling gear or motive power - pro rata the total number of
cranes/winches required at that time for the loading/discharging of cargo
under this Charter Party - shall not count as laytime or time on demurrage.
On request the Owners shall provide free of charge cranemen/winchmen from
the crew to operate the Vessel's cargo handling gear, unless local regulations
prohibit this, in which latter event shore labourers shall be for the account of the
Charterers. Cranemen/winchmen shall be under the Charterers' risk and
responsibility and as stevedores to be deemed as their servants but shall
always work under the supervision of the Master.~~

(c) ~~Stevedore Damage~~ see Rider Clause 35
~~The Charterers shall be responsible for damage (beyond ordinary wear and
tear) to any part of the Vessel caused by Stevedores. Such damage shall be
notified as soon as reasonably possible by the Master to the Charterers or their
agents and to their Stevedores, failing which the Charterers shall not be held
responsible. The Master shall endeavour to obtain the Stevedores' written
acknowledgement of liability.
The Charterers are liable to repair any stevedore damage prior to completion
of the voyage, but must repair stevedore damage affecting the Vessel's
seaworthiness or class before the Vessel sails from the port where such
damage was caused or found. All additional expenses incurred shall be for the
account of the Charterers and any time lost shall be for the account of and shall
be paid to the Owners by the Charterers at the demurrage rate.~~

6. **Laytime**
~~*(a)~~ Separate laytime for loading and discharging see Rider Clause 26
~~The cargo shall be loaded within the number of running days/hours as
indicated in Box 16, weather permitting, Sundays and holidays excepted,
unless used, in which event time used shall count.
The cargo shall be discharged within the number of running days/hours as
indicated in Box 16, weather permitting, Sundays and holidays excepted,
unless used, in which event time used shall count.~~
~~*(b) Total laytime for loading and discharging~~
~~The cargo shall be loaded and discharged within the number of total running
days/hours as indicated in Box 16, weather permitting, Sundays and holidays
excepted, unless used, in which event time used shall count.~~
~~c) Commencement of laytime (loading and discharging)~~
Laytime for loading and discharging shall commence at 13.00 hours, if notice of
readiness is given up to and including 12.00 hours, and at 06.00 hours next
working day if notice given during office hours after 12.00 hours. Notice of

readiness at loading port to be given to the Shippers named in Box 17 or if not
named, to the Charterers or their agents named in Box 18. Notice of readiness
at the discharging port to be given to the Receivers or, if not known, to the
Charterers or their agents named in Box 19.
If the loading/discharging berth is not available on the Vessel's arrival at or off
the port of loading/discharging, the Vessel shall be entitled to give notice of
readiness within ordinary office hours on arrival there, whether in free pratique
or not, whether customs cleared or not. Laytime or time on demurrage shall
then count as if she were in berth and in all respects ready for loading/
discharging provided that the Master warrants that she is in fact ready in all
respects. Time used in moving from the place of waiting to the loading/
discharging berth shall not count as laytime.
If, after inspection, the Vessel is found not to be ready in all respects to load/
discharge time lost after the discovery thereof until the Vessel is again ready to
load/discharge shall not count as laytime.
Time used before commencement of laytime shall count .
*Indicate alternative (a) or (b) as agreed, in Box 16

7. **Demurrage**    see Rider Clause 31
Demurrage at the loading and discharging port is payable by the Charterers at
the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for
any part of a day Demurrage shall fall due day-by-day and shall be payable
upon receipt of the Owners' invoice.
In the event the demurrage is not paid in accordance with the above, the
Owners shall give the Charterers 96 running hours written notice to rectify the
failure. If the demurrage is not paid at the expiration of this time limit and if the
vessel is in or at the loading port, the Owners are entitled at any time to
terminate the Charter Party and claim damages for any losses caused thereby.

8. **Lien Clause**
The Owners shall have a lien on the cargo and on all sub-freights payable in
respect of the cargo, for freight, deadfreight, demurrage, claims for damages
and for all other amounts due under this Charter Party ~~including costs of
recovering same.~~

9. **Cancelling Clause**
(a) Should the Vessel not be ready to load (whether in berth or not) on the
cancelling date indicated in Box 21, the Charterers shall have the option of
cancelling this Charter Party.
(b) Should the Owners anticipate that, despite the exercise of due diligence,
the Vessel will not be ready to load by the cancelling date, they shall notify the
Charterers thereof without delay stating the expected date of the Vessel's
readiness to load and asking whether the Charterers will exercise their option
of cancelling the Charter Party, or agree to a new cancelling date.
Such option must be declared by the Charterers within 48 running hours after
the receipt of the Owners' notice. If the Charterers do not exercise their option
of cancelling, then this Charter Party shall be deemed to be amended such that
the seventh day after the new readiness date stated in the Owners' notification
to the Charterers shall be the new cancelling date.
The provisions of sub-clause (b) of this Clause shall operate only once, and in
case of the Vessel's further delay, the Charterers shall have the option of
cancelling the Charter Party as per sub-clause (a) of this Clause.

10. **Bills of Lading**    in triplicate
Bills of Lading shall be presented and signed by the Master as per the
"Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter
Party, or by the Owners' agents provided written authority has been given by
Owners to the agents, a copy of which is to be furnished to the Charterers. The
Charterers shall indemnify the Owners against all consequences or liabilities
that may arise from the signing of bills of lading as presented to the extent that
the terms or contents of such bills of lading impose or result in the imposition of
more onerous liabilities upon the Owners than those assumed by the Owners
under this Charter Party.

11. **Both-to-Blame Collision Clause**
If the Vessel comes into collision with another vessel as a result of the
negligence of the other vessel and any act, neglect or default of the Master,
Mariner, Pilot or the servants of the Owners in the navigation or in the
management of the Vessel, the owners of the cargo carried hereunder will
indemnify the Owners against all loss or liability to the other or non-carrying
vessel or her owners in so far as such loss or liability represents loss of, or
damage to, or any claim whatsoever of the owners of said cargo, paid or
payable by the other or non-carrying vessel or her owners to the owners of said
cargo and set-off, recouped or recovered by the other or non-carrying vessel
or her owners as part of their claim against the carrying Vessel or the Owners.
The foregoing provisions shall also apply where the owners, operators or those
in charge of any vessel or vessels or objects other than, or in addition to, the
colliding vessels or objects are at fault in respect of a collision or contact.

12. **General Average and New Jason Clause**
General Average shall be adjusted in London unless otherwise agreed in Box
22 according to York-Antwerp Rules 1994 and any subsequent modification
thereof. Proprietors of cargo to pay the cargo's share in the general expenses
even if same have been necessitated through neglect or default of the Owners'
servants (see Clause 2).
If General Average is to be adjusted in accordance with the law and practice of
the United States of America, the following Clause shall apply: "In the event of
accident, danger, damage or disaster before or after the commencement of the
voyage, resulting from any cause whatsoever, whether due to negligence or
not, for which, or for the consequence of which, the Owners are not
responsible, by statute, contract or otherwise, the cargo shippers, consignees
or the owners of the cargo shall contribute with the Owners in General Average
to the payment of any sacrifices, losses or expenses of a General Average
nature that may be made or incurred and shall pay salvage and special charges
incurred in respect of the cargo. If a salving vessel is owned or operated by the
Owners, salvage shall be paid for as fully as if the said salving vessel or vessels
belonged to strangers. Such deposit as the Owners, or their agents, may deem
sufficient to cover the estimated contribution of the goods and any salvage and
special charges thereon shall, if required, be made by the cargo, shippers,
consignees or owners of the goods to the Owners before delivery."

13. **Taxes and Dues Clause**
(a) ~~On Vessel~~ - The Owners shall pay all dues, charges and taxes customarily
levied on the Vessel, howsoever the amount thereof may be assessed.
~~(b) On cargo - The Charterers shall pay all dues, charges, duties and taxes
customarily levied on the cargo, howsoever the amount thereof may be
assessed.~~
~~(c) On freight - Unless otherwise agreed in Box 23, taxes levied on the freight
shall be for the Charterers' account.~~

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

**14.** Agency
~~In every case the Owners shall appoint their own Agent both at the port of loading and the port of discharge.~~    See Rider Clause 22

**15.** Brokerage
A brokerage commission at the rate stated in Box 24 on the freight, dead-freight and demurrage earned is due to the party mentioned in Box 24.
~~In case of non-execution 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be agreed.~~

**16.** General Strike Clause
(a) If there is a strike or lock-out affecting or preventing the actual loading of the cargo, or any part of it, when the Vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask the Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless the Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of cancelling this Charter Party. If part cargo has already been loaded, the Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.

(b) If there is a strike or lock-out affecting or preventing the actual discharging of the cargo on or after the Vessel's arrival or port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the Vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging until the strike or lock-out terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter Party and of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance to the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

(c) Except for the obligations described above, neither the Charterers nor the Owners shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the cargo.

**17.** War Risks ("Voywar 1993")
(1) For the purpose of this Clause, the words:
(a) The "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and
(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all Vessels or imposed selectively against Vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons on board the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary

| | |
|---|---|
| | 207 |
| | 208 |
| | 209 |
| | |
| | 210 |
| | 211 |
| | 212 |
| | 213 |
| | 214 |
| | 215 |
| | 216 |
| | 217 |
| | |
| | 218 |
| | 219 |
| | 220 |
| | 221 |
| | 222 |
| | 223 |
| | 224 |
| | 225 |
| | 226 |
| | 227 |
| | 228 |
| | 229 |
| | 230 |
| | 231 |
| | 232 |
| | 233 |
| | 234 |
| | 235 |
| | 236 |
| | 237 |
| | 238 |
| | 239 |
| | 240 |
| | 241 |
| | 242 |
| | 243 |
| | 244 |
| | 245 |
| | 246 |
| | 247 |
| | |
| | 248 |
| | 249 |
| | 250 |
| | 251 |
| | 252 |
| | 253 |
| | 254 |
| | 255 |
| | 256 |
| | 257 |
| | 258 |
| | 259 |
| | 260 |
| | 261 |
| | 262 |
| | 263 |
| | 264 |
| | 265 |
| | 266 |
| | 267 |
| | 268 |
| | 269 |
| | 270 |
| | 271 |
| | 272 |
| | 273 |
| | 274 |
| | 275 |
| | 276 |
| | 277 |
| | 278 |
| | 279 |
| | 280 |
| | 281 |
| | 282 |
| | 283 |
| | 284 |
| | 285 |
| | 286 |
| | 287 |
| | 288 |
| | 289 |
| | 290 |
| | 291 |
| | 292 |
| | 293 |
| | 294 |
| | 295 |
| | 296 |
| | 297 |
| | 298 |
| | 299 |
| | 300 |
| | 301 |
| | 302 |
| | 303 |
| | 304 |
| | 305 |
| | 306 |
| | 307 |
| | 308 |
| | 309 |
| | 310 |
| | 311 |
| | 312 |
| | 313 |

(5) The Vessel shall have liberty:-
(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in anyway whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;
(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;
(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;
(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;
(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;
(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.
(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

**18.** General Ice Clause
Port of loading
(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the Master for fear of being frozen in is at liberty to leave without cargo, and this Charter Party shall be null and void.
(b) If during loading the Master, for fear of the Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for the Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party.
(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or the Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port.
Port of discharge
(a) Should ice prevent the Vessel from reaching or entering the port of discharge the Charterers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage or of ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination.
(b) If during discharging the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.
(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**19.** Law and Arbitration    see Rider Clause 29
~~(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three-man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final.~~
~~For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25* the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.~~
~~(b) This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this Charter Party, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.~~
~~For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25* the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc.~~
~~(c) Any dispute arising out of this Charter Party shall be referred to arbitration at the place indicated in Box 25, subject to the procedures here. The laws of the place indicated in Box 25 shall govern this Charter Party.~~
~~(d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply.~~
~~*(a), (b) and (c) are alternatives; indicate alternative agreed in Box 25.~~
~~(*Where no maximum amount is stated in Box 25, the Small Claims Procedure/Shortened Arbitration Procedure shall not apply.)~~
~~and the other provisions of this Clause shall have full force and remain in effect.~~

| | |
|---|---|
| | 314 |
| | 315 |
| | 316 |
| | 317 |
| | 318 |
| | 319 |
| | 320 |
| | 321 |
| | 322 |
| | 323 |
| | 324 |
| | 325 |
| | 326 |
| | 327 |
| | 328 |
| | 329 |
| | 330 |
| | 331 |
| | 332 |
| | 333 |
| | 334 |
| | 335 |
| | 336 |
| | 337 |
| | 338 |
| | 339 |
| | 340 |
| | 341 |
| | 342 |
| | 343 |
| | 344 |
| | |
| | 345 |
| | 346 |
| | 347 |
| | 348 |
| | 349 |
| | 350 |
| | 351 |
| | 352 |
| | 353 |
| | 354 |
| | 355 |
| | 356 |
| | 357 |
| | 358 |
| | 359 |
| | 360 |
| | 361 |
| | 362 |
| | 363 |
| | 364 |
| | 365 |
| | 366 |
| | 367 |
| | 368 |
| | 369 |
| | 370 |
| | 371 |
| | 372 |
| | 373 |
| | 374 |
| | 375 |
| | 376 |
| | 377 |
| | 378 |
| | 379 |
| | 380 |
| | 381 |
| | 382 |
| | 383 |
| | 384 |
| | 385 |
| | 386 |
| | 387 |
| | 388 |
| | 389 |
| | 390 |
| | 391 |
| | 392 |
| | 393 |
| | 394 |
| | 395 |
| | 396 |
| | 397 |
| | 398 |
| | 399 |
| | 400 |
| | 401 |
| | 402 |
| | 403 |
| | 404 |
| | 405 |
| | 406 |
| | 407 |
| | 408 |
| | 409 |
| | 410 |
| | 411 |
| | 412 |
| | 413 |
| | 414 |
| | 415 |
| | 416 |
| | 417 |

Rider Clauses to the Charter Party
dated on the 17th of July, 2003

====================================================

**Clause 20. Freight payment**

95 per cent of freight to be paid within 3 (three) banking days after completion of loading
and signing/releasing Congen Bills of Lading edition 1994 marked "Freight payable as per
C/P dated 17th of July, 2003" to Owners' nominated bank account. Freight to be discountless,
non-returnable vessel and/or cargo lost or not lost. Owners to pay disbursements both at
loading and discharging ports. Balance of freight to be settled within 20 days upon receipt
of all supporting documents together with settlement of demurrage/despatch.

**Clause 21. Notices**

Owners/Master to give 12/10/7/5/3 days approximate notices and 48/24 hours definite
notices of ETA at the loading port, specifying in the 5-days notice type of the vessel,
her flag, type, deadweight, last port of call, exact quantity of cargo to be loaded and
stowage plan, call sign, telex number and Master's name to the Charterers, Agent at
the loading port and Port Captain of Conakry SBK BP 882, telex 22148.
Owners/Master to give on sailing from the loading port 12/10/7/5 days provisional
notices and 72/48/24/12 hours definite notices of ETA at the discharging port, specifying
in the 5-days notices the exact quantity to be discharged, estimated arrival draft and cargo
plan to the Charterers and Agents at the discharging port.

**Clause 22.  Agents**

**Conakry :**
Getma, Guinea  (PIC Frank Fournier)
Tel :  (224) 454992, 413205
Fax : (224) 404200, 414273
Tlx :  (995) 22270

**Dneprobugskiy:**
"Pacific Maritime Ltd."
Tel : (380-512) 500401/2
Fax: (380-512) 500403
Tlx : (680) 272083 pilot ux

**Poti :**
Pace Shipping Agency Ltd.
Tel  : +995 393 70501
Fax : +995 393 70502
E-mail : pace-shipping@pace.ge
PIC : Mr.Iliya Kopanadze

**Clause 23. Loading and Discharging**

For loading and/or discharging purposes the master of the vessel shall fit the vessel to the
loading and/or discharging berths/installation by ballasting or deballasting tanks, if
necessary, provided port authorities permit. Furthermore, the vessel is to warp/shift along
the berth/wharf if and whenever required to do so by shippers/receivers and/or their agents.
The crew of the vessel shall handle lines only on board the vessel to warp and/or shift the
vessel alongside the loading and/or discharging berth/installations provided shore regulations
permit. The vessel's crew shall open and close hatches as required by shippers/receivers
and/or their agents at Owners expense, time used for opening/closing of hatches to count,
provided shore regulations permit, if not, same to be for Charterers' account. The master
shall cover the hatches of each hold as soon as loading into that hold has finished. If weather
is inclement or wet the master shall have all hatches closed when loading or discharging has
finished for the day. During rain and/or strong wind the master shall cover up all hatches into

or from which loading or discharging is not in progress. The vessel to provide sufficient lights on board the vessel for night work free of expense to Charterers/Shippers/Receivers.

Owners shall be responsible for the cargo beginning from the moment the cargo crossed the vessel's railings at the loading port or place, until the moment it crosses the railings at the discharging port or place.

## Clause 24. Overtime

Overtime to be for the account of the party ordering same. If overtime is ordered by port authorities then same to be for Charterers' account. Officers and crew overtime is always for Owners account.

## Clause 25. General Clause Paramount

This Bill of Lading shall have effect subject to the provisions of any legalization relating to the carriage of goods by sea, which incorporates the rules relating to Bills of Lading contained in the International Convention dated Brussels, 25th of August, 1924 and which is compulsorily applicable to the contract of carriage herein contained. Such legislation shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities thereunder. If any term of this Bill of Lading be repugnant to any extent to any legislation by this clause incorporated, such term shall be void to that extent, but no further. Nothing in this Bill of Lading shall operate to limit or deprive the Carrier of any statutory protection or exemption from, or limitation of, liability.

## Clause 26. Lay-time

Following conditions to apply for lay-time at loading port:

a) Cargo to be loaded at the rate of 10,000 metric tons per weather working day Sundays and holidays included. At loading port master to tender notice of readiness within office hours from 08:00 until 16:30 after vessel cleared port formalities and berthed. Laytime to count from 13:00 hours on the same day if notice of readiness is tendered and accepted until 12:00 hours and from 08:00 hours on the next working day if notice of readiness is tendered and accepted after 12:00 hours.

If the loading berth is not available upon vessel's arrival on roads of Conakry, master has the right to give notice of readiness on arrival whether in berth or not, whether in free pratique or not, whether customs cleared or not, provided loading berth is not occupied by another vessel of the Owners and provided the master warrants that the vessel is in fact in all respects ready to load the cargo and free pratique is granted before or upon berthing. If free pratique is not granted, time not to count from time of rejection until time free pratique is granted. If loading berth is occupied by Owners' another vessel, notice of readiness to be tendered and time to count as per paragraph hereabove. Actual time used thereafter in moving from the place of waiting to the berth, berthing and opening the hatches shall not count as lay-time or time on demurrage. If after berthing the vessel is found not to be ready in all respects for loading actual time lost from the discovery thereof until she is in fact ready to discharge the cargo not to count as lay-time or time on demurrage. Waiting time due to navigational reasons such as, but not limited to, weather conditions, awaiting daylights, awaiting pilots or tugs etc shall not count as lay-time or time on demurrage.

If performing vessel arrives on roads of Conakry before or after her scheduled laydays, she loses her priority to other vessel(s) arriving during their scheduled laydays. In such case notice of readiness to be tendered and laytime to count as per paragraph one of this clause.

b) Cargo to be discharged at Dneprobugskiy at the rate of 10,000 metric tons and at Poti at 5,000 metric tons per weather working day Sundays and holidays included.

Owners have option to lighten the amount of cargo exceeding draft limitations at the discharging port of Dneprobugskiy for their own risk and expense. Cargo to be lightened at the rate of 4,000 metric tons per weather working day Sundays and holidays included.

At discharging port master to tender notice of readiness at any time day/night Sundays and holidays included. If the discharging berth is not available on the vessel's arrival at the discharging port or so near thereto as she may be permitted to approach, master has the right to give notice of readiness on arrival at such waiting place whether in berth or not, whether at port or not, whether in free pratique or not, whether customs cleared or not, provided the master warrants that the vessel is in fact in all respects ready to discharge the cargo and free pratique is granted before or upon berthing. If free pratique is not granted, time not to count from time of rejection until time free pratique is granted. Actual time used thereafter in moving from the place of waiting to the berth, berthing and opening the hatches shall not count as lay-time or time on demurrage. If after berthing the vessel is found not to be ready in all respects for discharging actual time lost from the discovery thereof until she is in fact ready to discharge the cargo not to count as lay-time or time on demurrage. Waiting time due to navigational reasons such as, but not limited to, weather conditions, awaiting daylights, awaiting pilots or tugs or ice-breaker etc shall not count as lay-time or time on demurrage.

c) If during loading or discharging the vessel's master or the port authority orders the vessel out of the berth for reasons of safety due to cyclone, fire, explosion or imminent threat thereof, the period of time from cessation of loading or discharging until the vessel is again alongside the berth, with hatches open and in all respects ready to recommence loading or discharging shall not count as lay-time or time on demurrage. Charterers shall assist the Owners in attempting to obtain priority for their vessel at the loading or discharging berth (as the case may be) after such occurrence. Opening/closing of vessel's hatches as required by Port Operator shall be for Owners' account and time used not to count,

d) Any time lost during loading or discharging due to vessel's inability to load and/or discharge the cargo due to any defect or default of the vessel, deficiency and/or default of the vessel's personnel including inability of the vessel to ballast or deballast during loading or discharge shall not count as lay-time or time on demurrage.

e) Lay-time or time on demurrage shall cease on completion of loading and discharging.

f) Time used for draft checks ordered by master during loading not to count as lay-time or time on demurrage, and half time used for draft survey after completion of loading to count as lay-time or time on demurrage.

g) Laytime at loading and disch ports to be non-reversible.

h) Time used for shifting between berths both at loading and discharging ports to be for Charterers' account and time to count.

**Clause 27. P&I Club**

Owners P & I Club:  UK P&I Club

**Clause 28. Performing vessel**

- geared or gearless single deck bulk carrier maximum 25 years old, engine/bridge aft
- maximum : 215.40 meters LOA/ 31.86 meters BEAM
- classed highest Lloyd's or equivalent Class
- fully suitable for grab loading/discharging
- fully ISM certified

Performing vessel to be in every way suitable to load, carry and discharge cargo of bauxite. Performing vessel to be P&I Club covered with P&I Club being member of the international group of P&I Clubs and H&M insured throughout the whole voyage, performing vessel to be fully ITF fitted. Prior to loading the performing vessel's holds to be tendered free of rust and scale, washed, swept and clean to Shippers' satisfaction for the cargo of bauxites in bulk.

Performing vsls to be suitable for grab discharge and to be clear of sweat battens. Owners confirm that performing vessels will have no center line beams/bulkheads (girder), no fittings or other obstructions in holds. No cargo to be loaded in deeptanks, bunkers or other compartments not easily accessible to grabs. Any extra expenses or time lost in excess of normal grab discharge to be for owners' account. Deeptanks, tunnels and all other projections within vsl's holds are to be protected against damage by grabs, failing which owners/vsl to be responsible for any damage to vsl's holds.

Owners confirm, that they have checked loading and discharging ports and have satisfied themselves, that performing vessels will be suitable in all respects for this trade in these ports.

Charterers to inform owners of the anticipated program of shipments for every next month by the 16th date of the current month. Owners to propose their respective schedule of shipments latest by the 19th date of the current month to Charterers for Charterers' approval. The schedule must include names of the vessels, their type, flag, estimated intake and date of arrival at Conakry. Charterers have 4 (four) working days to accept such schedule or to propose an alternative schedule to Owners. Both parties should agree on the final schedule latest by the 28th date of the current month and such schedule to be considered as final and binding.

Owners shall have the right to substitute intended performing vessel without Charterers' approval of same within the agreed laydates latest 5 days prior to original vessel's ETA at loading port. Such vessel to load approximately the same cargo quantity as the scheduled vessel. If performing vessel arrives on roads of port Conakry on the date as agreed in schedule for each month or 2 days before or after that date, such vessel to be considered having arrived within her laydays.

**Clause 29. Arbitration**

The Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced. The reference shall be to three arbitrators. A party wishing to refer a dispute

to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and give notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator. In cases where neither the claim nor any counterclaim exceeds the sum of US$ 50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time, when the arbitration proceedings are commenced.

## Clause 30. Extra Insurance

Extra insurance, if any, due vessel's age/class/ownership to be for Charterers' account.

## Clause 31. Demurrage and Despatch

Demurrage and despatch at port of loading and discharging to be settled directly between Shipowners and Charterers as per time sheets established on the basis of Statements of Facts and N.O.R. co-signed by the representatives of shippers and receivers. It is to be settled within 20 days upon receipt of all documents as per the Charter Party. Despatch at half demurrage rate to be paid by Owners for lay-time saved at loading and discharging ports.

## Clause 32. I.S.M.

During the currency of this Charter Party the Owners shall procure that the vessels and the "Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant document of compliance (DOC) and Safety Management Certificate (SMC) to the Charterers, except as otherwise provided in this Charter Party. Any loss, damage, expense or delay caused by failure on the part of the Owners or the "Company" to comply with the ISM Code shall be for the Owners' account.

## Clause 33. Ice Clause

Under no circumstances the vessel shall be requested to force ice, but to follow ice-breaker only in broken ice.

## Clause 34. Shipments to Poti and Cargo Quantity

Charterers have an option to start shipments to Poti as from the 1st of January, 2004 and all terms and conditions of this Charter Party to be valid for such shipments, while the respective shipments to Dneprobugskiy in 2004 to be governed by the Charter Party dated on the 27th of July, 2001.

The word "about" in Box 12 of this Charter Party means maximum 3 (three) per cent less cargo for the whole Contract. Any cargo quantity upto maximum of 3.0 (three) million tons under this Contract to be shipped by Owners' vessels only.

In case Owners can not nominate suitable tonnage to carry the agreed cargo lots as per Box 12 of this Charter Party, they are exceptionally allowed to nominate a vessel for 25.000 metric tons 10 per cent up to 50.000 metric tons 10 per cent more or less in Owners' option cargo subject to Charterers' approval, which not to be unreasonably withheld.

### Clause 35.   Stevedore damage

Stevedore damage shall be settled directly between Owners and stevedores without any liability to Charterers, but Charterers to do their utmost to assist Owners in settling of said damages, if notified within 24 hours of occurrence. If damages affect vessel's seaworthiness, same to be repaired before sailing and time for repairs not to count as laytime or time on demurrage.

### Clause 36.  Bills of Lading

In the event when original Bill(s) of Lading is not available at discharging port, Owners to allow discharging against Charterers' corporate Letter of Indemnity issued in accordance with Owners' P&I Club wording. The original Bill(s) of Lading to be surrendered as soon as possible, but not later than 15 days after completion of discharging. Letter of Indemnity to be returned to Charterers or to be declared as null and void by Owners.

### Clause 37. Confidentiality

Terms and conditions of this Charter Party to be kept strictly private and confidential.

Moscow, 3rd of October, 2003

# Addendum No.1

to the Charter Party dated on the 27th of July, 2001
and to the Charter Party dated on the 17th of July, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
RUAL Trade Ltd./Wainfleet C.e.S. Lda, Maderia, Portugal (**Charterers**)

It has been agreed between Owners and Charterers this 3rd date of October, 2003 that :

1. Charterers have option to discharge at 1 (one) safe Minmetal berth of port Constantza (draft about 12 meters brackish water).

2. Charterers to declare their discharging option before completion of loading at Conakry.

3. Discharging rate at Constantza – 12,500 metric tons SHINC

4. Freight rates :

   US$ 12.00 per metric ton FIOT basis 1/1 for the C/P dated 27.07.2001,

   US$ 12.50 per metric ton FIOT basis 1/1 for the C/P dated 17.07.2003

   The above mentioned freight rates to be valid as from the 1st of January, 2004 only.

5. All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                    Signature (Charterers)

Moscow, 16th of December, 2004

# Addendum No.2

to the Charter Party dated on the 17th of July, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Wainfleet C.e.S. Lda, Madeira, Portugal (**Charterers**)

It has been agreed between Owners and Charterers this 16th date of December, 2004 that :

1.  Name of the Charterers to be changed to:
    Alumina & Bauxite Company Ltd., BVI

2.  All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                         Signature (Charterers)

08 ФЕВ 2005 15:40     NATICA#SHIPPING          007 095 9132293        с 1

Moscow, 8th of February, 2005

# Addendum No.3

to the Charter Party dated on the 17th of July, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Alumina & Bauxite Company Ltd., BVI (**Charterers**)

It has been agreed between Owners and Charterers this 8th date of February, 2005 that:

1. The Freight rate for the 6th shipment as per schedule for March, 2005 to be increased to US$ 22.00 per metric ton.

2. All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                          Signature (Charterers)

Moscow, 15th of March, 2005

# Addendum No.4

## to the Charter Party dated on the 17th of July, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Alumina & Bauxite Company Ltd., BVI (**Charterers**)

It has been agreed between Owners and Charterers this 15th date of March, 2005 that:

1. The freight rate for the shipment to Poti as per schedule for March, 2005 to be increased to US$25.00 per metric ton.

2. All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                          Signature (Charterers)

Moscow, 28th of April, 2005

# Addendum No.5

to the Charter Party dated on the 17th of July, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Alumina & Bauxite Company Ltd., BVI (**Charterers**)

It has been agreed between Owners and Charterers this 28th date of April, 2005 that:

1. All Contract freight rates for the year of 2006 to be increased at US$ 2.00 per
   metric ton on entire cargo. Freight rates for 2006 to be therefore as follows
   (per metric ton FIOT) :

   - US$ 15.50 pmt for discharging at Dneprobugskiy

   - US$ 16.50 pmt for discharging at Poti

   - US$ 14.50 pmt for discharging at Constantza

2. All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                          Signature (Charterers)

Moscow, 9th of June, 2005

# Addendum No.6

to the Charter Party dated on the 17th of July, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Alumina & Bauxite Company Ltd., BVI (**Charterers**)

It has been agreed between Owners and Charterers this 9th date of June, 2005 that:

1. In order to compensate Owners' losses due to the implementation of 20% VAT charge on port dues and services to ships calling Ukrainian ports by the Government of Ukraine, Contract freight rate for discharging in Dneprobugskiy to be increased at US$ 0.70 per metric ton on entire cargo. Therefore freight rate for all ships, which competed loading at Conakry starting from the 1st of June, 2005 onwards to be amended as follows (per metric ton FIOT) :

   - US$ 14.20 pmt for discharging at Dneprobugskiy in 2005 and in 2007/2011 respectively,

   - US$ 16.20 pmt for discharging at Dneprobugskiy in 2006.

2. All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)

Signature (Charterers)

Moscow, 15th date of August, 2005

# Addendum No.6a

to the Charter Party dated on the 17th of July, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Alumina & Bauxite Company Ltd., BVI (**Charterers**)

It has been agreed between Owners and Charterers this 15th date of August, 2005 that:

1. Charterers have an option to ship an additional amount of bauxite in bulk upto about 100,000 metric tons in 2006.

   Freight rates basis 1/1 for cargo quantity in excess of 3,000,000 metric tons in 2006 to be increased at US$ 1.00 per metric ton on entire cargo. Therefore freight rate for cargo shipped in excess of 3,000,000 metric tones in 2006 to be as follows (per metric ton FIOT):

   - US$ 17.20 pmt for discharging at Dneprobugskiy

   - US$ 17.50 pmt for discharging at Poti

   - US$ 15.50 pmt for discharging at Constantza

2. All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                              Signature (Charterers)

Moscow, 24th of November, 2005

# Addendum No.7

## to the Charter Party dated on the 17th of July, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Alumina & Bauxite Company Ltd., BVI (**Charterers**)

It has been agreed between Owners and Charterers this 24th date of November, 2005 that :

1. M/V 'Hugo Oldendorff', performing 72nd shipment under the above mentioned
   Contract, is to be discharged at two ports as following:

   Constantza - 15,000 metric tons of bauxite,
   discharging rate - 12,500 metric tons Sundays and holidays included

   Dneprobugsky - the balance cargo,
   discharging rate – 10,000 metric tons Sundays and holidays included

2. Freight rate: US$ 15,75 per metric ton FIOT basis 1/2

3. All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                                Signature (Charterers)

Moscow, 4th of April, 2006

# Addendum No.8

## to the Charter Party dated on the 17th of July, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Alumina & Bauxite Company Ltd., BVI (**Charterers**)

It has been agreed between Owners and Charterers this 4th date of April, 2006 that :

1. M/V 'Danuta', performing 101st shipment under the above mentioned
   Contract,  is to be discharged at two ports as following:

   Constantza - 18,000 metric tons of bauxite,
   discharging rate - 12,500 metric tons Sundays and holidays included,

   Dneprobugsky - the balance cargo,
   discharging rate – 10,000 metric tons Sundays and holidays included.

2. Freight rate:  US$ 17,70 per metric ton FIOT basis 1/2.

3.  All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                              Signature (Charterers)

·27.ДГЛ.2006 09:29                                            #5390 P.001 /001

Moscow, 21st of December, 2006

# Addendum No.9

to the Charter Party dated on the 17th of July, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Alumina & Bauxite Company Ltd., BVI (**Charterers**)

It has been agreed between Owners and Charterers this 21st date of December, 2006 that:

1. Agreement period : 1st January/31st December, 2007.
   Cargo quantity to be shipped minimum 680,000 mt bauxites. (Charterers' intention
   to ship about 420,000 mt to Dneprobugskiy for ZALK and about 260,000 mt to Poti.)

2. The following freight rates to be applicable for the shipments of minimum 680,000 mt
   to Poti and/or Dneprobugskiy for ZALK during the period of this Agreement :

   - US$ 26.20 pmt FIOT 1/1 for disch Dneprobugskiy for ZALK
   - US$ 26.50 pmt FIOT 1/1 for disch Poti

3. These shipments to be fairly evenly spread throughout the Agreement period
   of about 1/2 shipments per month. Charterers to declare the shipments, to which
   the above rates to be applicable upon agreeing on a monthly schedule as per C/P,
   In case there will be not enough shipments to Poti or to Dneprobugskiy for ZALK
   during 2007, Charterers to pay US$ 26.20 pmt for any shipments to Dneprobugskiy
   of minimum 680,000 mt bauxites fairly evenly spread at 1/2 shipments per month.

4. Owners hereby guarantee to provide full tonnage in 2007 strictly in accordance
   with Charterers' schedule of shipments for each month upto 3 (three) million tons
   per annum – i.e. the maximum cargo quantity as stipulated in the Contract.

5. The parties to negotiate an eventual increase of the CoA freight rates for the
   next 4 years of the Contract (2008/2011) by the 30th of June, 2007.

6. Charterers to give Owners the last chance to offer their best fixing rates on
   the following coming bauxites CoAs from Glencore:
   a) Weipa/Porto Vesme
   b) Kamsar/Auginish
   c) Trombetas/Auginish

7. All terms and conditions of this agreement to remain strictly private and confidential
   and not to be disclosed to any 3rd parties.

8. All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                              Signature (Charterers)

Moscow, 23rd of March, 2007

# Addendum No.10

to the Charter Party dated on the 17th of July, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Alumina & Bauxite Company Ltd., BVI (**Charterers**)

It has been agreed between Owners and Charterers this 23rd date of March, 2007 that :

1. The 179th shipment under the above mentioned Contract to be performed by :

        m/v 'Tai Health':
        flag : Panama
        blt : 2001
        dwat : 51,008 mt on 11.91 m ssw
        grt 28,615 / nrt 17,654
        loa/beam: 189.99 / 32.26
        grain capacity: 65,414 cbm
        5 ho/ha
        cranes : 4 x 30 mt
        class: ABS
        P&I club: Britannia
        estimated cargo intake: about 39,250 mt.

2. Freight rate:  US$ 29.20 per metric ton FIOT

3. All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                              Signature (Charterers)

Moscow, 23rd of April, 2007

# Addendum No.11

## to the Charter Party dated on the 17th of July, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Alumina & Bauxite Company Ltd., BVI (**Charterers**)

It has been agreed between Owners and Charterers this 23rd date of April, 2007 that:

1. The 189th shipment under the above mentioned Contract to be performed by:

        m/v 'Yick Shun'
        blt 1982 / panama flag
        dwat 39,818.80 on abt 11,219 m
        grt/nrt 23715 / 12565
        loa / beam: 187.00 m / 28.80 m
        5 hoha
        cranes gearless
        class: NK
        P & I club: UK
        estimated intake: about 34,000 mts
        ETA Conakry: 25 April 2007 agw

2. Freight rate:  US$ 30.50 per metric ton FIOT

3. Demurrage:  US$ 30,000 per day / pro rata.

4. All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                              Signature (Charterers)

# EXHIBIT 2

CP/RT - 488/0803

A 5.1

| 1. Shipbroker | RECOMMENDED **2nd ORIGINAL**<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for trades for which no specially approved form is in force)<br>CODE NAME: "GENCON"                                             Part I |
|---|---|
| | 2. Place and date    Moscow, 7th of August, 2003 |
| 3. Owners/Place of business (Cl. 1)<br><br>Mercury Shipping & Trading Ltd.,<br>St.Vincent & the Grenadines | 4. Charterers/Place of business (Cl. 1)<br><br>Wainfleet C.e.S. Lda<br>Madeira, Portugal |
| 5. Vessel's name (Cl. 1)<br>tonnage to be nominated by Owners | 6. GT/NT (Cl.1)    ——— |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)<br><br>——— | 8. Present position (Cl. 1)<br><br>trading |
| 9. Expected ready to load (abt.) (Cl. 1)<br>31st of August, 2003 | |
| 10. Loading port or place (Cl. 1)<br>1/2 (one/two) safe berth(s) port Conakry, Guinea, where<br>draft 9.50 m s.w. on high tide and loading at alumina berth | 11. Discharging port or place (Cl. 1)<br>1/2 (one/two) safe berth(s) port St.Petersburg or Murmansk<br>in Charterers' option |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br>about 150,000 metric tons in Charterers' option up to 200,000 metric tons alumina in bulk to be shipped in 2003 year<br>about 350,000 metric tons in Charterers' option up to about 500,000 metric tons alumina in bulk per annum<br>to be shipped over 2004 - 2008 years<br>in lots of 25,000 metric tons up to 26,500 metric tons 5% more or less in Owners' option  (See Rider Clause 34) | | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br><br>US$ 19.00 per metric ton FIOT<br>extra US$ 1.00 per metric ton FIOT for discharging<br>at St.Petersburg outside IWL | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>95 % of freight to be paid within 3 banking days<br>after signing/relaring Bills of Lading<br>(See Rider Clause 20) |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5) | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6) | (a) Laytime for loading<br>See Rider Clause 26 (a) |
| 18. Agents (loading) (Cl. 6)<br>Charterers'   (See Rider Clause 22) | (b) Laytime for discharging<br>See Rider Clause 26 (b) |
| 19. Agents (discharging) (Cl. 6)<br>Charterers'   (See Rider Clause 22) | (c) Total laytime for loading and discharging |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br>US$ 8,000 per day pro rata / DHD WTS both ends | 21. Cancelling date (Cl. 9)<br>31st of December, 2008 |
| | 22. General Average to be adjusted at (Cl. 12)<br>London |
| 23. Freight Tax (state if for the Owners' account (Cl .13 (c)) | 24. Brokerage commission and to whom payable (Cl. 15) |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)<br>English Law to apply, Arbitration in London<br>(See Rider Clause 29) | |
| (a) State maximum amount for small claims/shortened arbitration (Cl. 19) | 26. Additional clauses covering special provisions, if agreed<br>Rider Clauses 20-37 included in this Charter Party |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.



| Signature (Owners) | Signature (Charterers) |
|---|---|

PART II
"Gencon" Charter (As Revised 1922,1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as the Charterers in Box 4 that.

The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and responsibility) as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo.

2. **Owners' Responsibility Clause**
The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied, or by the personal act or default of the Owners or their Manager.

And the Owners are not responsible for loss, damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this Clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.

3. **Deviation Clause** ~~en route for bunkering and in case of emergency~~
The Vessel has liberty to call at any port or ports ~~in any order, for any purpose,~~ to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. **Payment of Freight**
(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo. see Rider Clause 20

~~(b) Prepaid. If according to Box 13 freight is to be paid on shipment, it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost.~~

~~Neither the Owners nor their agents shall be required to sign or endorse bills of lading showing freight prepaid unless the freight due to the Owners has actually been paid.~~

~~(c) On delivery. If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered. Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on delivered weight/quantity provided such option is declared before breaking bulk and the weight/quantity can be ascertained by official weighing machine, joint draft survey or tally.~~

~~Cash for Vessel's ordinary disbursements at the port of loading to be advanced by the Charterers, if required, at highest current rate of exchange, subject to two (2) per cent to cover insurance and other expenses.~~

5. **Loading/Discharging**
(a) *Costs/Risks*
The cargo shall be brought into the holds, loaded, stowed and/or trimmed, ~~tallied, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. The Charterers shall provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.~~

(b) *Cargo Handling Gear*
~~Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power pro rata the total number of cranes/winches required at that time for the loading/discharging of cargo under this Charter Party shall not count as laytime or time on demurrage. On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Cranemen/winchmen shall be under the Charterers' risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master.~~

(c) *Stevedore Damage*    See Rider Clause 35
~~The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.~~

~~The Charterers are obliged to repair any stevedore damage prior to completion of the voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and any time lost shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate.~~

6. **Laytime**
~~*(a) Separate laytime for loading and discharging~~ see Rider Clause 28
~~The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.~~

~~The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.~~

~~*(b) Total laytime for loading and discharging~~
~~The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.~~

~~(c) Commencement of laytime (loading and discharging)~~
~~Laytime for loading and discharging shall commence at 13.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day if notice given during office hours after 12.00 hours. Notice of~~

readiness at loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in Box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 18.

~~If the loading/discharging berth is not available on the Vessel's arrival at or off the port of loading/discharging, the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/discharging berth shall not count as laytime.~~

~~If, after inspection, the Vessel is found not to be ready in all respects to load/discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as lay time.~~

Time used before commencement of lay time shall count .
*Indicate alternative (a) or (b) as agreed, in Box 16

7. **Demurrage**    see Rider Clause 31
Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for any part of a day Demurrage shall fall due day-by-day and shall be payable upon receipt of the Owners' invoice.

~~In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the vessel is in or at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby.~~

8. **Lien Clause**
The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, ~~demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.~~

9. **Cancelling Clause**
(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21, the Charterers shall have the option of cancelling this Charter Party.

(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date.

Such option must be declared by the Charterers within 48 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date.

The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause.

10. **Bills of Lading**    in triplicate
Bills of Lading shall be presented and signed by the Master as per the "Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' agents provided written authority has been given by Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of bills of lading as presented to the extent that the terms or contents of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

11. **Both-to-Blame Collision Clause**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

12. **General Average and New Jason Clause**
General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).

If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery.".

13. **Taxes and Dues Clause**
~~(a) On Vessel - The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.~~

~~(b) On cargo - The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed.~~

(c) *On freight* - Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the Charterers' account.

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

**14. Agency**

~~In every case the Owners shall appoint their own Agent both at the port of loading and the port of discharge.~~  See Rider Clause 22

**15. Brokerage**

A brokerage commission at the rate stated in Box 24 on the freight, dead-freight and demurrage earned is due to the party mentioned in Box 24.
~~In case of non-execution 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be agreed.~~

**16. General Strike Clause**

(a) If there is a strike or lock-out affecting or preventing the actual loading of the cargo, or any part of it, when the Vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask the Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless the Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of cancelling this Charter Party. If part cargo has already been loaded, the Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.

(b) If there is a strike or lock-out affecting or preventing the actual discharging of the cargo on or after the Vessel's arrival at or off port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the Vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging until the strike or lock-out terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter Party and of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance to the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

(c) Except for the obligations described above, neither the Charterers nor the Owners shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the cargo.

**17. War Risks ("Voywar 1993")**

(1) For the purpose of this Clause, the words:
(a) The "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and
(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all Vessels or imposed selectively against Vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons on board the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(5) The Vessel shall have liberty:-
(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;
(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;
(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;
(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;
(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;
(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

**18. General Ice Clause**

*Port of loading*
(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the Master for fear of being frozen in is at liberty to leave without cargo, and this Charter Party shall be null and void.
(b) If during loading the Master, for fear of the Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for the Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party.
(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or the Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port.

*Port of discharge*
(a) Should ice prevent the Vessel from reaching port of discharge the Charterers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage or of ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination.
(b) If during discharging the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.
(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**19. Law and Arbitration**   see Rider Clause 29

~~*(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three men tribunal thus constituted or any two of them shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final.~~

~~For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.~~

~~*(b) This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this Charter Party, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.~~

~~For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc.~~

~~*(c) Any dispute arising out of this Charter Party shall be referred to arbitration at the place indicated in Box 25, subject to the procedures applicable there. The laws of the place indicated in Box 25 shall govern this Charter Party.~~
~~(d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply.~~
~~*(a), (b) and (c) are alternatives; indicate alternative agreed in Box 25.~~
~~** Where no figure is supplied in Box 25 in Part I, this provision only shall be void but the other provisions of this Clause shall have full force and remain in effect.~~

## Rider Clauses to the Charter Party
### dated on the 7th of August, 2003

**Clause 20. Freight payment**

95 per cent of freight to be paid within 3 (three) banking days after completion of loading and signing/releasing Congen Bills of Lading edition 1994 marked "Freight payable as per C/P dated 7th of August, 2003" to Owners' nominated bank account. Freight to be discountless, non-returnable vessel and/or cargo lost or not lost. Owners to pay disbursements both at loading and discharging ports. Balance of freight to be settled within 20 days upon receipt of all supporting documents together with settlement of demurrage/despatch.

**Clause 21. Notices**

Owners/Master to give 12/10/7/5/3 days approximate notices and 48/24 hours definite notices of ETA at the loading port, specifying in the 5-days notice type of the vessel, her flag, type, deadweight, last port of call, exact quantity of cargo to be loaded and stowage plan, call sign, telex number and Master's name to the Charterers, Agent at the loading port and Port Captain of Conakry SBK BP 882, telex 22148.
Owners/Master to give on sailing from the loading port 12/10/7/5 days provisional notices and 72/48/24/12 hours definite notices of ETA at the discharging port, specifying in the 5-days notices the exact quantity to be discharged, estimated arrival draft and cargo plan to the Charterers and Agents at the discharging port.

**Clause 22.  Agents**

**Conakry :**
Getma, Guinea  (PIC Frank Fournier)
Tel : (224) 454992, 413205
Fax : (224) 404200, 414273
Tlx : (995) 22270

**St.Petersburg:**                          **Murmansk:**
Incotec Service Ltd.                      Nord Mor Service Ltd.
Tel: (812) 3271737                        Tel: (8152)233229/230950
Fax: (812) 3279336                        Tel: +47 789 10127 (via Norway)
MIC: Mr. Sergey Pravotorov                MIC: Mr. Igor Rossinskiy

**Clause 23. Loading and Discharging**

For loading and/or discharging purposes the master of the vessel shall fit the vessel to the loading and/or discharging berths/installation by ballasting or deballasting tanks, if necessary, provided port authorities permit. Furthermore, the vessel is to warp/shift along the berth/wharf if and whenever required to do so by shippers/receivers and/or their agents. The crew of the vessel shall handle lines only on board the vessel to warp and/or shift the vessel alongside the loading and/or discharging berth/installations provided shore regulations permit. The vessel's crew shall open and close hatches as required by shippers/receivers and/or their agents at Owners expense, time used for opening/closing of hatches to count, provided shore regulations permit, if not, same to be for Charterers' account. The master shall cover the hatches of each hold as soon as loading into that hold has finished. If weather is inclement or wet the master shall have all hatches closed when loading or discharging has finished for the day. During rain and/or strong wind the master shall cover up all hatches into

or from which loading or discharging is not in progress. The vessel to provide sufficient lights as on board the vessel for night work free of expense to Charterers/Shippers/Receivers.

Owners shall be responsible for the cargo beginning from the moment the cargo crossed the vessel's railings at the loading port or place, until the moment it crosses the railings at the discharging port or place.

## Clause 24. Overtime

Overtime to be for the account of the party ordering same. If overtime is ordered by port authorities then same to be for Charterers' account. Officers and crew overtime is always for Owners account.

## Clause 25. General Clause Paramount

This Bill of Lading shall have effect subject to the provisions of any legalization relating to the carriage of goods by sea, which incorporates the rules relating to Bills of Lading contained in the International Convention dated Brussels, 25th of August, 1924 and which is compulsorily applicable to the contract of carriage herein contained. Such legislation shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities thereunder. If any term of this Bill of Lading be repugnant to any extent to any legislation by this clause incorporated, such term shall be void to that extent, but no further. Nothing in this Bill of Lading shall operate to limit or deprive the Carrier of any statutory protection or exemption from, or limitation of, liability.

## Clause 26. Lay-time

a) Cargo to be loaded at the rate of 8,000 metric tons per weather working day, Sundays and holidays included. On arrival in the roads of the port of Conakry master to tender written (telex, cable or letter) notice of readiness whether in berth or not, whether in free pratique or not, whether customs cleared or not within office hours from 08:00 until 16:30. Laytime to count from 14:00 hours on the same day if notice of readiness is tendered before and including noon or from 08:00 hours on the next working day if notice of readiness is tendered after noon. Loading rate at Conakry is based on minimum 3 (three) holds/hatches available for loading with tonnage equally distributed between holds/hatches allocated. If loading is performed with less than 3 holds at request of the owners, then loading rate to be adjusted pro-rata based on 8,000 metric tons per day for 3 holds.

Master has the right to give notice of readiness on arrival, provided the master warrants that the vessel is in fact in all respects ready to load the cargo and free pratique is granted before or upon berthing. If free pratique is not granted, time not to count from time of rejection until time free pratique is granted. Actual time used thereafter in moving from the place of waiting to the berth, berthing and opening the hatches shall not count as lay-time or time on demurrage. If after berthing the vessel is found not to be ready in all respects for loading actual time lost from the discovery thereof until she is in fact ready to discharge the cargo not to count as lay-time or time on demurrage. Waiting time due to navigational reasons such as, but not limited to, weather conditions, awaiting daylights, awaiting pilots or tugs etc shall not count as lay-time or time on demurrage.

If performing vessel arrives on roads of Conakry before or after her scheduled laydays, she loses her priority to other vessel(s) arriving during their scheduled laydays.

b) Cargo to be discharged at the rate of 2,500 metric tons per weather working day Sundays and holidays included. At discharging port master to tender notice of readiness at any time day/night Sundays and holidays included. If the discharging berth is not available on the vessel's arrival at the discharging port or so near thereto as she may be permitted to approach, master has the right to give notice of readiness on arrival at such waiting place whether in berth or not, whether at port or not, whether in free pratique or not, whether customs cleared or not, provided the master warrants that the vessel is in fact in all respects ready to discharge the cargo and free pratique is granted before or upon berthing. If free pratique is not granted, time not to count from time of rejection until time free pratique is granted. Actual time used thereafter in moving from the place of waiting to the berth, berthing and opening the hatches shall not count as lay-time or time on demurrage. If after berthing the vessel is found not to be ready in all respects for discharging actual time lost from the discovery thereof until she is in fact ready to discharge the cargo not to count as lay-time or time on demurrage. Waiting time due to navigational reasons such as, but not limited to, weather conditions, awaiting daylights, awaiting pilots or tugs or ice-breaker etc shall not count as lay-time or time on demurrage.

c) If during loading or discharging the vessel's master or the port authority orders the vessel out of the berth for reasons of safety due to cyclone, fire, explosion or imminent threat thereof, the period of time from cessation of loading or discharging until the vessel is again alongside the berth, with hatches open and in all respects ready to recommence loading or discharging shall not count as lay-time or time on demurrage. Charterers shall assist the Owners in attempting to obtain priority for their vessel at the loading or discharging berth (as the case may be) after such occurrence. Opening/closing of vessel's hatches as required by Port Operator shall be for Owners' account and time used not to count,

d) Any time lost during loading or discharging due to vessel's inability to load and/or discharge the cargo due to any defect or default of the vessel, deficiency and/or default of the vessel's personnel including inability of the vessel to ballast or deballast during loading or discharge shall not count as lay-time or time on demurrage.

e) Lay-time or time on demurrage shall cease on completion of loading and discharging.

f) Time used for draft checks ordered by master during loading not to count as lay-time or time on demurrage, and half time used for draft survey after completion of loading to count as lay-time or time on demurrage.

g) Laytime at loading and disch ports to be non-reversible.

h) Time used for shifting between berths both at loading and discharging ports to be for Charterers' account and time to count.

**Clause 27. P&I Club**

Owners P & I Club:  UK P&I Club

**Clause 28. Performing vessel**

- geared or gearless single deck bulk carrier maximum 25 years old, engine/bridge aft
- maximum : 178.0 meters LOA
- classed highest Lloyd's or equivalent Class
- fully suitable for grab loading/discharging
- fully ISM certified

Performing vessel to be in every way suitable to load, carry and discharge cargo of alumina. Performing vessel to be P&I Club covered with P&I Club being member of the international group of P&I Clubs and H&M insured throughout the whole voyage, performing vessel to be fully ITF fitted. Prior to loading the performing vessel's holds to be tendered free of rust and scale, washed, swept and clean to Shippers' satisfaction for the cargo of bauxites in bulk.

Performing vsls to be suitable for grab discharge and to be clear of sweat battens. Owners confirm that performing vessels will have no center line beams/bulkheads (girder), no fittings or other obstructions in holds. No cargo to be loaded in deeptanks, bunkers or other compartments not easily accessible to grabs. Any extra expenses or time lost in excess of normal grab discharge to be for owners' account. Deeptanks, tunnels and all other projections within vsl's holds are to be protected against damage by grabs, failing which owners/vsl to be responsible for any damage to vsl's holds.

Owners confirm, that they have checked loading and discharging ports and have satisfied themselves, that performing vessels will be suitable in all respects for this trade in these ports.

Charterers nominate laydays of 7 days spread for every next month before 10th day of the current month. Owners shall advise the following details of the performing vessel to Charterers not later than 7 (seven) days prior to the first day of lay/can:

a) name, former name, flag, port of registry, year of built,
b) deadweight, fully laden draft, expected arrival and sailing drafts,
c) LOA, BEAM and airdraft
d) number of holds/hatches, sizes of holds/hatches,
e) number and type of gear, SWL in metric tons, tank-top strengths,
f) Classification Society, P&I Club, H&M Underwriters,
g) expected quantity of cargo to be loaded,
h) ETA at Conakry.

**Clause 29. Arbitration**

The Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced. The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and give notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.
Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator. In cases where neither the claim nor any counterclaim exceeds the sum of US$ 50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time, when the arbitration proceedings are commenced.

### Clause 30. Extra Insurance

Extra insurance, if any, due vessel's age/class/ownership to be for Charterers' account.

### Clause 31. Demurrage and Despatch

Demurrage and despatch at port of loading and discharging to be settled directly between Shipowners and Charterers as per time sheets established on the basis of Statements of Facts and N.O.R. co-signed by the representatives of shippers and receivers. It is to be settled within 20 days upon receipt of all documents as per the Charter Party. Despatch at half demurrage rate to be paid by Owners for lay-time saved at loading and discharging ports.

### Clause 32. I.S.M.

During the currency of this Charter Party the Owners shall procure that the vessels and the "Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant document of compliance (DOC) and Safety Management Certificate (SMC) to the Charterers, except as otherwise provided in this Charter Party. Any loss, damage, expense or delay caused by failure on the part of the Owners or the "Company" to comply with the ISM Code shall be for the Owners' account.

### Clause 33. Ice Clause

Under no circumstances the vessel shall be requested to force ice, but to follow ice-breaker only in broken ice.

### Clause 34. Cargo Quantity

Charterers to declare an approximate quantity of cargo for each next year latest by 30th of October of the current year.

### Clause 35.  Stevedore damage

Stevedore damage shall be settled directly between Owners and stevedores without any liability to Charterers, but Charterers to do their utmost to assist Owners in settling of said damages, if notified within 24 hours of occurrence. If damages affect vessel's seaworthiness, same to be repaired before sailing and time for repairs not to count as laytime or time on demurrage.

### Clause 36.  Bills of Lading

In the event when original Bill(s) of Lading is not available at discharging port, Owners to allow discharging against Charterers' corporate Letter of Indemnity issued in accordance with Owners' P&I Club wording. The original Bill(s) of Lading to be surrendered as soon as possible, but not later than 15 days after completion of discharging. Letter of Indemnity to be returned to Charterers or to be declared as null and void by Owners.

### Clause 37. Confidentiality

Terms and conditions of this Charter Party to be kept strictly private and confidential.

Moscow, 20th of January, 2004

# Addendum No.1

to the Charter Party dated on the 7th of August, 2003


between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Wainfleet C.e.S. Lda, Madeira, Portugal (**Charterers**)


It has been agreed between Owners and Charterers this 20th date of January, 2003 that :

1.  For year 2004 name of Charterers to be changed to:
    RUAL Trade Ltd., BVI.

2.  All other terms and conditions of the Contract to remain unaltered.


Signature (Owners)                              Signature (Charterers)

*1st* ORIGINAL

Moscow, 6th of July, 2004

# Addendum No.2

to the Charter Party dated on the 7th of August, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Wainfleet C.e.S. Lda, Madeira, Portugal (**Charterers**)

It has been agreed between Owners and Charterers this 6th date of July, 2004 that :

1. Owners to ship additional about 200,000 metric tons alumina in bulk in 2004 year.

    Freight rate US$ 21.00 per metric ton FIOT,
        extra  US$ 1.00  per metric ton FIOT for discharging at St.Petersburg outside IWL.

2. Charterers have industrial options of additional about 200,000 metric tons alumina in bulk
    per annum in 2005 - 2008 years.
    These optional quantities for each next year to be declared at the same time as quantity
    as per the Contract , i.e. latest by 30th of October of the current year.

    Freight rate US$ 20.00 per metric ton FIOT,
        extra  US$ 1.00  per metric ton FIOT for discharging at St.Petersburg outside IWL.

3. In case Charterers declare cargo quantity less than about 700,000 metric tons alumina in
    bulk for each next year within 2005 - 2008 years, they can not ship any further cargoes of
    alumina in bulk from Conakry to Murmansk or St.Petersburg with other carriers that year.

4. All other terms/conditions as per CoA cp 07.08.03

Signature (Owners)                          Signature (Charterers)

*CP /PT-488/0803 (abdm. 2-W)*

Moscow, 1st of June, 2004

# Addendum No.2

## to the Charter Party dated on the 7th of August, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Wainfleet C.e.S. Lda, Madeira, Portugal (**Charterers**)

It has been agreed between Owners and Charterers this 1st date of June, 2004 that :

1.  Name of Charterers to be changed back to Wainfleet C.e.S. Lda, Madeira, Portugal starting from 1st of June 2004.

2.  All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                        Signature (Charterers)

Moscow, 26th of July, 2004

# Addendum No.3

## to the Charter Party dated on the 7th of August, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Wainfleet C.e.S. Lda, Madeira, Portugal (**Charterers**)

It has been agreed between Owners and Charterers this 26th date of July, 2004 that :

1.  Starting from 1st August 2004 name of Charterers to be changed to:
    Alumina & Bauxite Company Ltd., BVI

2.  All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                              Signature (Charterers)

Moscow, 17th of January, 2006

# Addendum No.4

## to the Charter Party dated on the 7th of August, 2003

between Mercury Shipping & Trading Ltd., St.Vincent & the Grenadines (**Owners**)
and
Alumina & Bauxite Company Ltd., BVI (**Charterers**)

It has been agreed between Owners and Charterers this 17th date of January, 2006 that :

1. Voyage with lay/can 29 January - 4 February 2006 to be performed
   to discharging port Poti.

2. Cargo to be discharged at Poti at the rate of 3,000 metric tons per weather working day
   Saturdays, Sundays and holidays excluded unless used, in which case all time actually
   used to count. Time from noon on Saturday or on a day preceeding a holiday untill
   08:00 on Monday or a day after a holiday not to count unless used. Notice of readiness
   to be tendered and accepted from 08:00 to 17:00 hours from Monday to Friday and
   to 12:00 hours on Saturday.
   If notice of readiness is tendered and accepted before 12:00 hours, laytime to count from
   16:00 hours the same day and if notice of readiness is tendered and accepted after
   12:00 hours, laytime to count from 08:00 next working day.

3. Freight rate: US$ 23.00 per metric ton FIOT

2. All other terms and conditions of the Contract to remain unaltered.

Signature (Owners)                                    Signature (Charterers)