# EXHIBIT 3

A.5.1

| 1. Shipbroker | RECOMMENDED  1st ORIGINAL<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for trades for which no specially approved form is in force)<br>CODE NAME: "GENCON"  Part I |
|---|---|
| CP/QF- 826/205 | 2. Place and date    Moscow, 7th of December, 2005 |
| 3. Owners/Place of business (Cl. 1)<br><br>Mercury Shipping & Trading Ltd.,<br>St.Vincent & the Grenadines | 4. Charterers/Place of business (Cl. 1)<br><br>Alumina & Bauxite Company Ltd.,<br>BVI |
| 5. Vessel's name (Cl. 1)<br>tonnage to be nominated by Owners | 6. GT/NT (Cl. 1) |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1) | 8. Present position (Cl. 1)<br><br>trading |
| 9. Expected ready to load (abt.) (Cl. 1)<br>1st of January 2006 | |
| 10. Loading port or place (Cl. 1)<br>1 (one) safe anchorage port New Amsterdam, Guyana | 11. Discharging port or place (Cl. 1)  1 (one) safe berth/safe<br>anchorage port Oneprobugskiy or 1 (one) safe berth port<br>Poti or 1 safe berth Constantza in Charterers' option |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo" (Cl. 1)<br><br>In charterers' option the following quantities of bauxites in bulk to be shipped per annum:<br>in 2006 – about 300/400,000 mt, in 2007 – about 400/600,000 mt, in 2008/2009 – about 800/1,400,000 mt<br>in 2010 – about 800/1,500,000 mt to be shipped by lots from 30,000 mt to 45,000 mt 10 pct moloo.<br>(See Rider Clause 33) | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br><br>See Rider Clause 20 | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>95 % of freight to be paid within 3 banking days<br>after signing/releasing Bills of Lading<br>(See Rider Clause 20) |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5) | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6) | (a) Laytime for loading<br>See Rider Clause 26 (a) |
| 18. Agents (loading) (Cl. 6)<br>Owners  (See Rider Clause 22) | (b) Laytime for discharging<br>See Rider Clause 26 (b) |
| 19. Agents (discharging) (Cl. 6)<br>Charterers  (See Rider Clause 22) | (c) Total laytime for loading and discharging |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br>US$ 14,000 per day pro rata / DHD WTS at discharging<br>only (See Rider Clause 30) | 21. Cancelling date (Cl. 9)<br>31st of December, 2010 |
| | 22. General Average to be adjusted at (Cl. 12)<br>London |
| 23. Freight Tax (state if for the Owners' account (Cl. 13 (c)) | 24. Brokerage commission and to whom payable (Cl. 15) |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)<br>English Law to apply  Arbitration in London<br>(See Rider Clause 28)<br><br>(a) State maximum amount for small claims/shortened arbitration (Cl. 19) | 26. Additional clauses covering special provisions, if agreed<br>Rider Clauses 20-37 included in this Charter Party |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

**PART II**
"Gencon" Charter (As Revised 1922, 1976 and 1994)

Owners' Responsibility Clause

Deviation Clause

Payment of Freight

Loading/Discharging

(a) Costs/Risks

(c) Cargo Handling Gear

(e) Stevedore Damage    See Rider Clause 34.

Laytime

Demurrage    See Rider Clause 30

Lien Clause

Cancelling Clause

Bills of Lading

Both-to-Blame Collision Clause

General Average and New Jason Clause

Taxes and Dues Clause

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

**14. Agency**

See Rider Clause 22

**15. Brokerage**

**16. General Strike Clause**

(a)

(b)

(c)

**17. War Risks ("Voywar 1993")**

(1) For the purpose of this Clause, the words:

(a)

(b)

(2)

(3)

(4)

**(5) The Vessel shall have liberty:**

(a)

(b)

(c)

(d)

(e)

(f)

(6)

**General Ice Clause**

Port of loading

(a)

(b)

(c)

Port of discharge

(a)

(b)

(c)

**18. Law and Arbitration    See Rider Clause 25**

(a)

(b)

(c)

(d)

## Rider Clauses to the Charter Party
## dated on the 7th of December, 2005

**Clause 20. Freight rates and freight payment**

Freight rates basis 1/1 for cargo quantity upto and including 3,100,000 mt.:

- US$ 26.25 pmt FIOST discharging Dneprobugskiy
- US$ 27.25 pmt FIOST discharging Poti
- US$ 24.25 pmt FIOST discharging Constantza

Freight rates basis 1/1 for cargo quantity in excess of 3,100,000 mt.:

- US$ 26.00 pmt FIOST discharging Dneprobugskiy
- US$ 27.00 pmt FIOST discharging Poti
- US$ 24.00 pmt FIOST discharging Constantza

The respective Transshipment fee of US$ 3.00 per metric ton of bauxite to be paid by SCGI additionally to the freight in accordance with CoA and Addendum No.1 dated 21st October, 2005.

95 per cent of freight to be paid within 3 (three) banking days after completion of loading and signing/releasing Congen Bills of Lading edition 1994 marked "Freight payable as per C/P dated 7th of December, 2005" to Owners' nominated bank account. Freight to be discountless, non-returnable vessel and/or cargo lost or not lost. Owners to pay disbursements both at loading and discharging ports. Balance of freight to be settled within 20 days upon receipt of all supporting documents together with settlement of demurrage/despatch.

**Clause 21. Notices**

Owners/Master to give 10/7/5/3 days provisional notices and 48/24 hours definite notices of ETA at the loading port, specifying in the 5-days notice type of the vessel, her flag, deadweight, exact quantity of cargo to be loaded and stowage plan, call sign, telex number and Master's name to the Charterers and Agents at the loading port.
Owners/Master to give on sailing from the loading port 12/10/7/5 days provisional notices and 72/48/24/12 hours definite notices of ETA at the discharging port, specifying in the 5-days notices the exact quantity to be discharged, estimated arrival draft and cargo plan to the Charterers and Agents at the discharging port.

**Clause 22. Agents**

Owners' nominated agents at loading port.

At discharging ports following Charterers' agents to be nominated by Owners :

**Dneprobugskiy:**
"Pacific Maritime Ltd."
Tel.: (380-512) 590401/2
Fax: (380-512) 500403
Tlx: (680) 272083 pilot ux

**Constantza :**
IDU Shipping & Services SRL
Tel: +40 241 545300
Fax: +40241 545500
Mob: +40 723 958836
E-mail: office@idu.ro



Poti :
Pace Shipping Agency Ltd.
Tel : +995 393 70501
Fax : +995 393 70502
E-mail : pace-shipping@pace.ge
PIC : Mr.Iliya Kopanadze

## Clause 23. Loading and Discharging

For loading and/or discharging purposes the master of the vessel shall fit the vessel to the loading and/or discharging berths/installation by ballasting or deballasting tanks, if necessary, provided port authorities permit. Furthermore, the vessel is to warp/shift along the berth/wharf if and whenever required to do so by shippers/receivers and/or their agents. The crew of the vessel shall handle lines only on board the vessel to warp and/or shift the vessel alongside the loading and/or discharging berth/installations provided shore regulations permit. The vessel's crew shall open and close hatches as required by shippers/receivers and/or their agents at Owners expense, time used for opening/closing of hatches to count, provided shore regulations permit, if not, same to be for Charterers' account. The master shall cover the hatches of each hold as soon as loading into that hold has finished. If weather is inclement or wet the master shall have all hatches closed when loading or discharging has finished for the day. During rain and/or strong wind the master shall cover up all hatches into or from which loading or discharging is not in progress. The vessel to provide sufficient lights on board the vessel for night work free of expense to Charterers/Shippers/Receivers.

Owners shall be responsible for the cargo beginning from the moment the cargo crossed the vessel's railings at the loading port or place, until the moment it crosses the railings at the discharging port or place.

## Clause 24. Overtime

Overtime to be for the account of the party ordering same. If overtime is ordered by port authorities then same to be for Charterers' account. Officers and crew overtime is always for Owners account.

## Clause 25. General Clause Paramount

This Bill of Lading shall have effect subject to the provisions of any legalization relating to the carriage of goods by sea, which incorporates the rules relating to Bills of Lading contained in the International Convention dated Brussels, 25th of August, 1924 and which is compulsorily applicable to the contract of carriage herein contained. Such legislation shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities thereunder. If any term of this Bill of Lading be repugnant to any extent to any legislation by this clause incorporated, such term shall be void to that extent, but no further. Nothing in this Bill of Lading shall operate to limit or deprive the Carrier of any statutory protection or exemption from, or limitation of, liability.

## Clause 26. Lay-time

a) Loading at New Amsterdam on Customary Quick Despatch terms.

b) Cargo to be discharged at Dneprobugskiy at the rate of 10,000 metric tons and at Poti at 5,000 metric tons per weather working day Sundays and holidays included.



Discharging at Constantza at 15,000 mt per weather working day Sundays and Holidays included at Convex berth, where Notice of Readiness to be tendered att all times Sundays and Holidays included, WIBON, WIPPON, WIPON and WICCON. Laytime at Constantza to commence 12 hours after Notice of Readiness is rendered.

Owners have option to lighten the amount of cargo exceeding draft limitations at the discharging port of Dneprobugskiy for their own risk and expense. Cargo to be lightened at the rate of 4,000 metric tons per weather working day Sundays and holidays included.

At discharging port master to tender notice of readiness at any time day/night Sundays and holidays included. If the discharging berth is not available on the vessel's arrival at the discharging port or so near thereto as she may be permitted to approach, master has the right to give notice of readiness on arrival at such waiting place whether in berth or not, whether at port or not, whether in free pratique or not, whether customs cleared or not, provided the master warrants that the vessel is in fact in all respects ready to discharge the cargo and free pratique is granted before or upon berthing. If free pratique is not granted, time not to count from time of rejection until time free pratique is granted. Actual time used thereafter in moving from the place of waiting to the berth, berthing and opening the hatches shall not count as lay-time or time on demurrage. If after berthing the vessel is found not to be ready in all respects for discharging actual time lost from the discovery thereof until she is in fact ready to discharge the cargo not to count as lay-time or time on demurrage. Waiting time due to navigational reasons such as, but not limited to, weather conditions, awaiting daylights, awaiting pilots or tugs or ice-breaker etc shall not count as lay-time or time on demurrage.

c) If during discharging the vessel's master or the port authority orders the vessel out of the berth for reasons of safety due to cyclone, fire, explosion or imminent threat thereof, the period of time from cessation of discharging until the vessel is again alongside the berth, with hatches open and in all respects ready to recommence loading or discharging shall not count as lay-time or time on demurrage. Charterers shall assist the Owners in attempting to obtain priority for their vessel at the discharging berth (as the case may be) after such occurrence. Opening/closing of vessel's hatches as required by Port Operator shall be for Owners' account and time used not to count;

d) Any time lost during discharging due to vessel's inability to discharge the cargo due to any defect or default of the vessel, deficiency and/or default of the vessel's personnel including inability of the vessel to ballast or deballast during discharge shall not count as lay-time or time on demurrage.

e) Lay-time or time on demurrage shall cease on completion of discharging.

f) Time used for shifting between berths at discharging port to be for Charterers' account and time to count.

## Clause 27. Performing vessel

- geared or gearless single deck bulk carrier maximum 30 years old, engine/bridge aft
- classed highest Lloyd's or equivalent Class
- fully suitable for grab loading/discharging
- geared or gearless
- fully ISM certified

Performing vessel to be in every way suitable to load, carry and discharge cargo of bauxite. Performing vessel to be P&I Club covered with P&I Club being member of the International

group of P&I Clubs and H&M insured throughout the whole voyage, performing vessel to be fully ITF fitted. Prior to loading the performing vessel's holds to be tendered free of rust and scale, washed, swept and clean to Shippers' satisfaction for the cargo of bauxites in bulk.

Performing vsls to be suitable for grab discharge and to be clear of sweat battens. Owners confirm that performing vessels will have no center line beams/bulkheads (girder), no fittings or other obstructions in holds. No cargo to be loaded in deeptanks, bunkers or other compartments not easily accessible to grabs. Any extra expenses or time lost in excess of normal grab discharge to be for owners' account. Deeptanks, tunnels and all other projections within vsl's holds are to be protected against damage by grabs, failing which owners/vsl to be responsible for any damage to vsl's holds.

Owners confirm, that they have checked loading and discharging ports and have satisfied themselves, that performing vessels will be suitable in all respects for this trade in these ports.

## Clause 28. Arbitration

The Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced. The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and give notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator. In cases where neither the claim nor any counterclaim exceeds the sum of US$ 50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time, when the arbitration proceedings are commenced.

## Clause 29. Extra Insurance

Extra insurance, if any, due vessel's age/class/ownership to be for Charterers' account.

## Clause 30. Demurrage and Despatch

Demurrage and despatch at port of discharging to be settled directly between Shipowners and Charterers as per time sheets established on the basis of Statements of Facts and N.O.R. signed by the representatives of receivers. It is to be settled within 20 days upon receipt of all documents as per the Charter Party. Despatch at half demurrage rate to be paid by Owners for lay-time saved at discharging port.

## Clause 31. I.S.M.

During the currency of this Charter Party the Owners shall procure that the vessels and the "Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant document of compliance (DOC) and Safety Management Certificate (SMC) to the Charterers, except as otherwise provided in this Charter Party. Any loss, damage, expense or delay caused by failure on the part of the Owners or the "Company" to comply with the ISM Code shall be for the Owners' account.

## Clause 32. Ice Clause

Under no circumstances the vessel shall be requested to force ice, but to follow ice-breaker only in broken ice.

## Clause 33. Cargo Quantity

About means 3% less in Charterers' option.
Owners hereby agree to ship the reduced quantity of bauxites of about 270,000/300,000 mt only from Trombetas in 2006 under the CoA dated 1st September, 2004 against shipment of balance cargo from New Amsterdam. The parties to issue a respective Addendum to the Charter Party dated 1st September, 2004, stating that cgo quantity in 2006 to be reduced down to about 270/300,000 mt bauxites.

In case Owners can not nominate suitable tonnage to carry the agreed cargo lots as per Box 12 of this Charter Party, they are exceptionally allowed to nominate a vessel for 25,000 metric tons 10 per cent up to 50,000 metric tons 10 per cent more or less in Owners' option cargo subject to Charterers' approval, which not to be unreasonably withheld.

## Clause 34. Stevedore damage

Stevedore damage shall be settled directly between Owners and stevedores without any liability to Charterers, but Charterers to do their utmost to assist Owners in settling of said damages, if notified within 24 hours of occurrence. If damage affect vessel's seaworthiness, same to be repaired before sailing and time for repairs not to count as laytime or time on demurrage.

## Clause 35. Bills of Lading

In the event when original Bill(s) of Lading is not available at discharging port, Owners to allow discharging against Charterers' corporate Letter of Indemnity issued in accordance with Owners' P&I Club wording. The original Bill(s) of Lading to be surrendered as soon as possible, but not later than 15 days after completion of discharging. Letter of Indemnity to be returned to Charterers or to be declared as null and void by Owners.

## Clause 36. I.S.P.S

(A): (I) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(B) (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and any other information the Owners require to comply with the ISPS Code.

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account and any delay caused by such failure shall be compensated at the demurrage rate.

(C) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on laytime or demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage has ceased to count, it shall be compensated by the Charterers at the demurrage rate.

(D) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(E) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

## Clause 37. Confidentiality

Terms and conditions of this Charter Party to be kept strictly private and confidential.



Moscow, 27th of July, 2007

# ADDENDUM No.1

to the Contract of Affreightment dated on the 7th of December, 2005 (hereinafter called the "COA") between:

MERCURY SHIPPING & TRADING LTD.
of St.Vincent & the Grenadines                    (The "Owners")

and

ALUMINA & BAUXITE COMPANY LTD.          (The "Charterers")
of British Virgin Islands

### Shipments of Bauxites New Amsterdam/Dneprobugskiy

The following conditions have been agreed between the parties on this date 27th of July, 2007:

1. Additional about 350.000 mt bulk bauxites to be carried to Dneprobugskiy in 2007 at the CoA rate of US$ 26.25 pmt FIOT. About means 3 % less in Charterers' option.

2. CoA cargo size to be minimum 25.000 upto 40.000 metric tons in Owners option, which to be valid for the whole duration of this Contract.

3. Freight rate for their whole quantity of bauxites to be carried to Dneprobugskiy in 2008:

   US$ 39.00 per metric ton FIOT basis 1/1.

4. Charterers hereby guarantee to ship minimum 1.2 million metric tons of bauxites to Dneprobugskiy in 2008.

5. If Charterers fail to ship minimum 1.2 million mt bauxites in 2008, Charterers to compensate Owners by payment of extra lumpsum freight at US$ 15.00 pmt for any shortshipped quantity from 1.20 million mt. Such extra freight to be paid by Charterers to Owners unconditionally latest on 30th January, 2009 against Owners' respective invoice.

6. Demurrage rate at Dneprobugskiy for about 350.000 metric tons to be carried in 2007 after shipping maximum about 600.000 mt as per CoA to be the following:

   - US$ 40.000 pd/pr for 35/40.000 mt lots
   - US$ 32.000 pd/pr for 25/30.000 mt lots

7. All other terms and conditions as per CoA C/P dated on the 7th of December, 2005.

END

On behalf of the Charterers                On behalf of the Owners
BAUXITE COMPANY OF GUYANA INC.     MERCURY SHIPPING & TRADING LTD.

# EXHIBIT 4

A 5.1

| 1. Shipbroker<br><br>CP/RS- 888/0906 | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for trades for which no specially approved form is in force)<br>CODE NAME: "GENCON"          Part I      *1st* **Original** |
|---|---|
| | 2. Place and date    Moscow, 6th September, 2006 |
| 3. Owners/Place of business (Cl. 1)<br><br>Mercury Shipping & Trading Ltd.,<br>St.Vincent & the Grenadines<br><br>as disponent Owners | 4. Charterers/Place of business (Cl. 1)<br><br>Alumina & Bauxite Company Ltd., BVI |
| 5. Vessel's name (Cl. 1)<br>tonnage to be nominated by Owners | 6.GT/NT(Cl.1) |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1) | 8. Present position (Cl. 1) |
| 9. Expected ready to load (abt.) (Cl. 1)<br>See Rider Clause 35 | |
| 10. Loading port or place (Cl. 1)<br>1 (one) safe berth Weipa , 11,7 m sw | 11. Discharging port or place (Cl. 1)<br>1(one) safe anchorage/safe berth Dneprobugskiy;<br>max 9,8 m bw |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo" (Cl. 1)<br><br>12/14 cargoes in Charterers' option, each cargo 60,000 metric tons 10 per cent more or less in Owners' option<br>bauxite in bulk to be shipped evenly spread within 2007 | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br><br>US$ 39,75 per metric ton FIOT  1/1 | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br>95 % of freight to be paid within 3 banking days<br>after signing/releasing Bills of Lading<br>(See Rider Clause 20) |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5) | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| | (a) Laytime for loading<br>See Rider Clause 26 (a) |
| 17. Shippers/Place of business (Cl. 6) | |
| 18. Agents (loading) (Cl. 6)<br>See Rider Clause 22 | (b) Laytime for discharging<br>See Rider Clause 26 (a) |
| 19. Agents (discharging) (Cl. 6)<br>See Rider Clause 22 | (c) Total laytime for loading and discharging |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br>US$ 9,500 per day pro rata / DHD WTS both ends<br>(See Rider Clause 31) | 21. Cancelling date (Cl. 9)<br>See Rider Clause 35 |
| | 22. General Average to be adjusted at (Cl. 12)<br>London |
| 23. Freight Tax (state if for the Owners' account (Cl .13 c)) | 24. Brokerage commission and to whom payable (Cl. 15) |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)<br><br>English Law to apply, Arbitration in London<br>(See Rider Clause 29) | 26. Additional clauses covering special provisions, if agreed<br>Rider Clauses 20-39 included in this Charter Party |
| (a) State maximum amount for small claims/shortened arbitration (Cl. 19) | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

## PART II
### "Gencon" Charter (As Revised 1922, 1976 and 1994)

**1.** It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as the Charterers in Box 4 that. 1–6

The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and responsibility) as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo. 7–14

**2. Owners' Responsibility Clause**
The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied, or by the personal act or default of the Owners or their Manager. 15–21

And the Owners are not responsible for loss, damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this Clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever. 22–27

**3. Deviation Clause**    en route for bunkering and in case of emergency
The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property. 28–31

**4. Payment of Freight**
(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo.    see Rider Clause 20 32–34

(b) Prepaid. If according to Box 13 freight is to be paid on shipment, it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost. 35–37

Neither the Owners nor their agents shall be required to sign or endorse bills of lading showing freight prepaid unless the freight due to the Owners has actually been paid. 38–39

(c) On delivery. If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered. Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers have the option of paying the freight on delivered weight/quantity provided such option is declared before breaking bulk and the weight/quantity can be ascertained by official weighing-machine, joint-draft surveyor tally. 40–46

Cash for Owners' ordinary disbursements at the port of loading to be advanced by the Charterers, if required, at highest current rate of exchange, subject to two (2) per cent to cover insurance and other expenses. 47–49

**5. Loading/Discharging** 50

(a) Costs/Risks 51
The cargo shall be brought into the holds, loaded, stowed and/or trimmed, tallied, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. The Charterers shall provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed. 52–59

(b) Cargo Handling Gear 60
Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power pro rata the total number of cranes/winches required at that time for the loading/discharging of cargo under this Charter Party shall not count as laytime or time on demurrage. On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Cranemen/winchmen shall be under the Charterers' risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master. 61–76

(c) Stevedore Damage    see Rider Clause 37 77
The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability. 78–83

The Charterers are obliged to repair any stevedore damage prior to completion of the voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and any time lost shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate. 84–89

**6. Laytime** 90
*(a) Separate laytime for loading and discharging    see Rider Clause 26 90
The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count. 91–93

The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count. 94–96

*(b) Total laytime for loading and discharging 97
The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count. 98–100

(c) Commencement of laytime (loading and discharging) 101
Laytime for loading and discharging shall commence at 13.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day if notice given during office hours after 12.00 hours. Notice of 102–104

readiness at loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in Box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 19. 105–108

If the loading/discharging berth is not available on the Vessel's arrival at or off the port of loading/discharging, the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/ discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/ discharging berth shall not count as laytime. 109–116

If, after inspection, the Vessel is found not to be ready in all respects to load/ discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime. 117–119

Time used before commencement of laytime shall count. 120

*Indicates alternative (a) or (b) as agreed, in Box 16 121

**7. Demurrage**    see Rider Clause 31 122
Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for any part of a day. Demurrage shall fall due day by day and shall be payable upon receipt of the Owners' invoice. 123–126

In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the vessel is in or at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby. 127–131

**8. Lien Clause** 132
The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same. 133–136

**9. Cancelling Clause** 137
(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21, the Charterers shall have the option of cancelling this Charter Party. 138–140

(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date. 141–145

Such option must be declared by the Charterers within 48 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date. 146–150

The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause. 151–153

**10. Bills of Lading**    in indicate 154
(a) Bills of Lading shall be presented and signed by the Master as per the "Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' agents provided written authority has been given by Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of bills of lading as presented to the extent that the terms or contents of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party. 155–163

**11. Both-to-Blame Collision Clause** 164
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Manner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact. 165–177

**12. General Average and New Jason Clause** 178
General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2). 179–183

If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery.". 184–198

**13. Taxes and Dues Clause** 199
(a) On Vessel - The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed. 200–201

(b) On cargo - The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed. 202–204

(c) On freight - Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the Charterers' account. 205–206

# PART II
## "Gencon" Charter (As Revised 1922, 1976 and 1994)

**14.  Agency**    See Rider Clause 22    207
In every case the Owners shall appoint their own Agent both at the port of    208
loading and the port of discharge.    209

**15.  Brokerage**    210
A brokerage commission at the rate stated in Box 24 on the freight, dead-freight    211
and demurrage earned is due to the party mentioned in Box 24.    212
In case of non-execution 1/3 of the brokerage on the estimated amount of    213
freight to be paid by the party responsible for such non-execution to the    214
Brokers as indemnity for the latter's expenses and work. In case of more    215
voyages the amount of indemnity to be agreed.    216

**16.  General Strike Clause**    217
(a) If there is a strike or lock-out affecting or preventing the actual loading of the    218
cargo, or any part of it, when the Vessel is ready to proceed from her last port or    219
at any time during the voyage to the port or ports of loading or after her arrival    220
there, the Master or the Owners may ask the Charterers to declare, that they    221
agree to reckon the laydays as if there were no strike or lock-out. Unless the    222
Charterers have given such declaration in writing (by telegram, if necessary)    223
within 24 hours, the Owners shall have the option of cancelling this Charter    224
Party. If part cargo has already been loaded, the Owners must proceed with    225
same, (freight payable on loaded quantity only) having liberty to complete with    226
other cargo on the way for their own account.    227
(b) If there is a strike or lock-out affecting or preventing the actual discharging    228
of the cargo on or after the Vessel's arrival at or off port of discharge and same    229
has not been settled within 48 hours, the Charterers shall have the option of    230
keeping the Vessel waiting until such strike or lock-out is at an end against    231
paying half demurrage after expiration of the time provided for discharging    232
until the strike or lock-out terminates and thereafter full demurrage shall be    233
payable until the completion of discharging, or of ordering the Vessel to a safe    234
port where she can safely discharge without risk of being detained by strike or    235
lock-out. Such orders to be given within 48 hours after the Master or the    236
Owners have given notice to the Charterers of the strike or lock-out affecting    237
the discharge. On delivery of the cargo at such port, all conditions of this    238
Charter Party and of the Bill of Lading shall apply and the Vessel shall receive    239
the same freight as if she had discharged at the original port of destination,    240
except that if the distance to the substituted port exceeds 100 nautical miles,    241
the freight on the cargo delivered at the substituted port to be increased in    242
proportion.    243
(c) Except for the obligations described above, neither the Charterers nor the    244
Owners shall be responsible for the consequences of any strikes or lock-outs    245
preventing or affecting the actual loading or discharging of the cargo.    246

**17.  War Risks ("Voywar 1933")**    247
(1) For the purpose of this Clause, the words:    248
(a) The "Owners" shall include the shipowners, bareboat charterers,    249
disponent owners, managers or other operators who are charged with the    250
management of the Vessel, and the Master; and    251
(b) "War Risks" shall include any war (whether actual or threatened), act of    252
war, civil war, hostilities, revolution, rebellion, civil commotion, warlike    253
operations, the laying of mines (whether actual or reported), acts of piracy,    254
acts of terrorists, acts of hostility or malicious damage, blockades    255
(whether imposed against all Vessels or imposed selectively against    256
Vessels of certain flags or ownership, or against certain cargoes or crews    257
or otherwise howsoever), by any person, body, terrorist or political group,    258
or the Government of any state whatsoever, which, in the reasonable    259
judgement of the Master and/or the Owners, may be dangerous or are    260
likely to be or to become dangerous to the Vessel, her cargo, crew or other    261
persons on board the Vessel.    262
(2) If at any time before the Vessel commences loading, it appears that, in the    263
reasonable judgement of the Master and/or the Owners, performance of    264
the Contract of Carriage, or any part of it, may expose, or is likely to expose,    265
the Vessel, her cargo, crew or other persons on board the Vessel to War    266
Risks, the Owners may give notice to the Charterers cancelling this    267
Contract of Carriage, or may refuse to perform such part of it as may    268
expose, or may be likely to expose, the Vessel, her cargo, crew or other    269
persons on board the Vessel to War Risks; provided always that if this    270
Contract of Carriage provides that loading or discharging is to take place    271
within a range of ports, and at the port or ports nominated by the Charterers    272
the Vessel, her cargo, crew, or other persons on board the Vessel may be    273
exposed, or may be likely to be exposed, to War Risks, the Owners shall    274
first require the Charterers to nominate any other safe port which lies    275
within the range for loading or discharging, and may only cancel this    276
Contract of Carriage if the Charterers shall not have nominated such safe    277
port or ports within 48 hours of receipt of notice of such requirement.    278
(3) The Owners shall not be required to continue to load cargo for any voyage,    279
or to sign Bills of Lading for any port or place, or to proceed or continue on    280
any voyage, or on any part thereof, or to proceed through any canal or    281
waterway, or to proceed to or remain at any port or place whatsoever,    282
where it appears, either after the loading of the cargo commences, or at    283
any stage of the voyage thereafter before the discharge of the cargo is    284
completed, that, in the reasonable judgement of the Master and/or the    285
Owners, the Vessel, her cargo (or any part thereof), crew or other persons    286
on board the Vessel (or any one or more of them) may be, or are likely to be,    287
exposed to War Risks. If it should appear, the Owners may by notice    288
request the Charterers to nominate a safe port for the discharge of the    289
cargo or any part thereof, and if within 48 hours of the receipt of such    290
notice, the Charterers shall not have nominated such a port, the Owners    291
may discharge the cargo at any safe port of their choice (including the port    292
of loading) in complete fulfilment of the Contract of Carriage. The Owners    293
shall be entitled to recover from the Charterers the extra expenses of such    294
discharge and, if the discharge takes place at any port other than the    295
loading port, to receive the full freight as though the cargo had been    296
carried to the discharging port and if the extra distance exceeds 100 miles,    297
to additional freight which shall be the same percentage of the freight    298
contracted for as the percentage which the extra distance represents to    299
the distance of the normal and customary route, the Owners having a lien    300
on the cargo for such expenses and freight.    301
(4) If at any stage of the voyage after the loading of the cargo commences, it    302
appears that, in the reasonable judgement of the Master and/or the    303
Owners, the Vessel, her cargo, crew or other persons on board the Vessel    304
may be, or are likely to be, exposed to War Risks and any part of the route    305
(including any canal or waterway) which is normally and customarily used    306
in a voyage of the nature contracted for, and there is another longer route    307
to the discharging port, the Owners shall give notice to the Charterers that    308
this route will be taken. In this event the Owners shall be entitled, if the total    309
extra distance exceeds 100 miles, to additional freight which shall be the    310
same percentage of the freight contracted for as the percentage which the    311
extra distance represents to the distance of the normal and customary    312
route.    313

(5) The Vessel shall have liberty:-    314
(a) to comply with all orders, directions, recommendations or advice as to    315
departure, arrival, routes, sailing in convoy, ports of call, stoppages,    316
destinations, discharge of cargo, delivery or in anyway whatsoever which    317
are given by the Government of the Nation under whose flag the Vessel    318
sails, or other Government to whose laws the Owners are subject, or any    319
other Government which so requires, or any body or group acting with the    320
power to compel compliance with their orders or directions;    321
(b) to comply with the orders, directions or recommendations of any war    322
risks underwriters who have the authority to give the same under the terms    323
of the war risks insurance;    324
(c) to comply with the terms of any resolution of the Security Council of the    325
United Nations, any directive of the European Community, the effective    326
orders of any other Supranational body which has the right to issue and    327
give the same, and with national laws aimed at enforcing the same to which    328
the Owners are subject, and to obey the orders and directions of those who    329
are charged with their enforcement;    330
(d) to discharge at any other port any cargo or part thereof which may    331
render the Vessel liable to confiscation as a contraband carrier;    332
(e) to call at any other port to change the crew or any part thereof or other    333
persons on board the Vessel when there is reason to believe that they may    334
be subject to internment, imprisonment or other sanctions;    335
(f) where cargo has not been loaded or has been discharged by the    336
Owners under any provisions of this Clause, to load other cargo for the    337
Owners' own benefit and carry it to any other port or ports whatsoever,    338
whether backwards or forwards or in a contrary direction to the ordinary or    339
customary route.    340
(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this    341
Clause anything is done or not done, such shall not be deemed to be a    342
deviation, but shall be considered as due fulfilment of the Contract of    343
Carriage.    344

**18.  General Ice Clause**    345
*Port of loading*    346
(a) In the event of the loading port being inaccessible by reason of ice when the    347
Vessel is ready to proceed from her last port or at any time during the voyage or    348
on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the    349
Master for fear of being frozen in is at liberty to leave without cargo, and this    350
Charter Party shall be null and void.    351
(b) If during loading the Master, for fear of the Vessel being frozen in, deems it    352
advisable to leave, he has liberty to do so with what cargo he has on board and    353
to proceed to any other port or ports with option of completing cargo for the    354
Owners' benefit for any port or ports including port of discharge. Any part    355
cargo thus loaded under this Charter Party to be forwarded to destination at the    356
Vessel's expense but against payment of freight, provided that no extra    357
expenses be thereby caused to the Charterers, freight being paid on quantity    358
delivered (in proportion if lumpsum), all other conditions as per this Charter    359
Party.    360
(c) In case of more than one loading port, and if one or more of the ports are    361
closed by ice, the Master or the Owners to be at liberty either to load the part    362
cargo at the open port and fill up elsewhere for their own account as under    363
section (b) or to declare the Charter Party null and void unless the Charterers    364
agree to load full cargo at the open port.    365
*Port of discharge*    366
(a) Should ice prevent the Vessel from reaching port of discharge the    367
Charterers shall have the option of keeping the Vessel waiting until the re-    368
opening of navigation and paying demurrage or of ordering the Vessel to a safe    369
and immediately accessible port where she can safely discharge without risk of    370
detention by ice. Such orders to be given within 48 hours after the Master or the    371
Owners have given notice to the Charterers of the impossibility of reaching port    372
of destination.    373
(b) If during discharging the Master for fear of the Vessel being frozen in deems    374
it advisable to leave, he has liberty to do so with what cargo he has on board    375
and to proceed to the nearest accessible port where she can safely discharge.    376
(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall    377
apply and the Vessel shall receive the same freight as if she had discharged at    378
the original port of destination, except that if the distance of the substituted port    379
exceeds 100 nautical miles, the freight on the cargo delivered at the substituted    380
port to be increased in proportion.    381

**19.  Law and Arbitration**    see Rider Clause 29    382
(a) This Charter Party shall be governed by and construed in accordance with    383
English law and any dispute arising out of this Charter Party shall be referred to    384
arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or    385
any statutory modification or re-enactment thereof for the time being in force.    386
Unless the parties agree upon a sole arbitrator, one arbitrator shall be    387
appointed by each party and the arbitrators so appointed shall appoint a third    388
arbitrator, the decision of the three-man tribunal thus constituted or any two of    389
them, shall be final. On the receipt by one party of the nomination in writing of    390
the other party's arbitrator, that party shall appoint their arbitrator within    391
fourteen days, failing which the decision of the single arbitrator appointed shall    392
be final.    393
For disputes where the total amount claimed by either party does not exceed    394
the amount stated in Box 25** the arbitration shall be conducted in accordance    395
with the Small Claims Procedure of the London Maritime Arbitrators    396
Association.    397
(b) This Charter Party shall be governed by and construed in accordance with    398
Title 9 of the United States Code and the Maritime Law of the United States and    399
should any dispute arise out of this Charter Party, the matter in dispute shall be    400
referred to three persons at New York, one to be appointed by each of the    401
parties hereto, and the third by the two so chosen; their decision or that of any    402
two of them shall be final, and for the purpose of enforcing any award, this    403
agreement may be made a rule of the Court. The proceedings shall be    404
conducted in accordance with the rules of the Society of Maritime Arbitrators,    405
Inc.    406
For disputes where the total amount claimed by either party does not exceed    407
the amount stated in Box 25** the arbitration shall be conducted in accordance    408
with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators,    409
Inc.    410
(c) Any dispute arising out of this Charter Party shall be referred to arbitration    411
at the place indicated in Box 25, subject to the procedures applicable there. The    412
laws of the place indicated in Box 25 shall govern this Charter Party.    413
(d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply.    414
*(a), (b) and (c) are alternatives; indicate alternative agreed in Box 25.    415
**Where no figure is supplied in Box 25 in Part I, this provision only shall be void    416
but the other provisions of this Clause shall have full force and remain in effect.    417

Rider Clauses to the Charter Party
dated on the 6th of September, 2006

**Clause 20. Freight payment**

95 per cent of freight to be paid within 3 banking days after completion of loading and signing/releasing Congen Bills of Lading edition 1994 marked "Freight payable as per C/P dated 6th of September, 2006" to Owners' nominated bank account. Freight to be discountless, non-returnable vessel and/or cargo lost or not lost. Owners to pay disbursement accounts both at loading and discharging ports. Balance of freight to be settled within 20 days upon receipt of all supporting documents together with settlement of demurrage/despatch.

**Clause 21. Notices**

Owners/Master to give: 12/9/6/4 days provisional notices and 72/48/24 hours definite notices of ETA at the loading port, specifying in the 4-days notice the exact quantity to be loaded, estimated laden draft and stowage plan to the Charterers and Agent at the loading port. Owners/Master to give: on sailing from the loading port/20/15/12/9/6/4 days provisional notices and 72/48/24/12 hours definite notices of ETA at the discharging port, specifying in the 4-days notices the exact quantity to be discharged, estimated arrival draft and cargo plan to the Charterers and Agents at the discharging port.

**Clause 22. Agents**

| **Weipa :** | **Dneprobugskiy :** |
|---|---|
| Barwil Agencies | Pacific Maritime Ltd. |
| Tel : 61-070 697203 | Tel:  (380-512)500401/2 |
| Fax : 61-070 697221 | Fax: (380-512)500403 |
| Tlx : AA 48808 | Tlx: (680) 272083 PILOT UX or 272087 PACMA UX |

**Clause 23. Loading and Discharging**

For loading and/or discharging purposes the master of the vessel shall fit the vessel to the loading and/or discharging berths/installation by ballasting or deballasting tanks, if necessary, provided port authorities permit. Furthermore, the vessel is to warp/shift along the berth/wharf if and whenever required to do so by shippers/receivers and/or their agents. The crew of the vessel shall handle lines only on board the vessel to warp and/or shift the vessel alongside the loading and/or discharging berth/installations provided shore regulations permit. The vessel's crew shall open and close hatches as required by shippers/receivers and/or their agents at Owners expense, time used for opening/closing of hatches to count, provided shore regulations permit, if not, same to be for Charterers' account. The master shall cover the hatches of each hold as soon as loading into that hold has finished. If weather is inclement or wet the master shall have all hatches closed when loading or discharging has finished for the day. During rain and/or strong wind the master shall cover up all hatches into or from which loading or discharging is not in progress. The vessel to provide sufficient lights as on board the vessel for night work free of expense to Charterers/Shippers/Receivers.

Owners shall be responsible for the cargo beginning from the moment the cargo crossed the vessel's railings at the loading port or place, until the moment it crosses the railings at the discharging port or place.

**Clause 24. Overtime**

Overtime to be for the account of the party ordering same. If overtime is ordered by port authorities then same to be for Charterers' account. Officers and crew overtime is always for Owners account.

**Clause 25. General Clause Paramount**

This Bill of Lading shall have effect subject to the provisions of any legalization relating to the carriage of goods by sea, which incorporates the rules relating to Bills of Lading contained in the International Convention dated Brussels, 25th of August, 1924 and which is compulsorily applicable to the contract of carriage herein contained. Such legislation shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities thereunder. If any term of this Bill of Lading be repugnant to any extent to any legislation by this clause incorporated, such term shall be void to that extent, but no further. Nothing in this Bill of Lading shall operate to limit or deprive the Carrier of any statutory protection or exemption from, or limitation of, liability.

**Clause 26. Lay-time**

a) cargo to be loaded at the rate of 40,000 metric tons per weather working day, Sundays and holidays included. Cargo to be discharged at the rate of 10,000 metric tons per weather working day Sundays and holidays included. Lightening for Owners' account at maximum USD 7.50 per metric ton at the rate of 4,000 metric tons per weather working day Sundays and holidays included. At all ports and lightening place Master may tender Notice of Readiness at any time day/night Sundays and holidays included and time to count 12 hours after Notice of Readiness is validly tendered and accepted unless loading/discharge commences sooner in which case actual time used before commencement of lay-time to count.

b) if the vessel is arriving prior to the agreed laydays Master may tender Notice of Readiness when the vessel is berthed or after commencement of laydays whichever occurs sooner. If the vessel starts loading before commencement of laydays, she is to be loaded on a turn-in-berth basis, with preference to vessels ready to load within their laydays.

c) if the loading and/or discharging berth is not available on the vessel's arrival at the loading and/or discharging port or so near thereto as she may be permitted to approach, the Master has the right to give Notice of Readiness on arrival at such waiting place whether in berth or not, whether at port or not, whether in free pratique or not, whether customs cleared or not, provided the Master warrants that the vessel is in fact in all respects ready to load and/or discharge the cargo and free pratique is granted before or upon berthing. If free pratique is not granted, time not to count from time of rejection until time free pratique is granted. Actual time used thereafter in moving from the place of waiting to the berth, berthing and opening the hatches shall not count as lay-time or time on demurrage. If after berthing the vessel is found not to be ready in all respects for loading and/or discharging actual time lost from the discovery thereof until she is in fact ready to load and/or discharge the cargo not to count as lay-time or time on demurrage. Waiting time due to navigational reasons such as, but not limited to, weather conditions, awaiting daylights, tides, awaiting pilots or tugs or ice-breaker etc. shall not count as lay-time or time on demurrage.

d) if during loading or discharging the vessel's master or the port authority orders the vessel out of the berth for reasons of safety due to cyclone, fire, explosion or imminent threat thereof, the period of time from cessation of loading or discharging until the vessel is again alongside the berth, with hatches open and in all respects ready to recommence loading or discharging shall not count as lay-time or time on demurrage. Charterers shall assist the Owners in attempting to obtain priority for their vessel at the loading or discharging berth (as the case may be) after such occurrence. Opening/closing of vessel's hatches as required by Port Operator shall be for Owners' account and time used not to count.

e) Any time lost during loading or discharging due to vessel's inability to load and/or discharge the cargo due to any defect or default of the vessel, deficiency and/or default of the vessel's personnel including inability of the vessel to ballast or deballast during loading or discharge shall not count as lay-time or time on demurrage.

f) Lay-time or time on demurrage shall cease on completion of final draft survey at loading port and on completion of discharging at discharging port.

g) Time used for draft checks ordered by master during loading not to count as lay-time or time on demurrage, and half time used for draft survey after completion of loading to count as lay-time or time on demurrage.

h) Laytime at loading and discharging ports to be non-reversible.

**Clause 27. P&I Club**

Owners P & I Club: TBA

**Clause 28. Performing vessels**

Performing vessels to be:
Singledeck, selftrimming, steelfloored bulkcarrier with engine/bridge aft
Maximum 24 years
Classed highest Lloyds or equivalent
Fully P.& I. covered
Fully ISM certified
Always subject to RightShip approval including ISPS Certificate
In all respects ready to trade Australia and equipped with Australian serviceable ladders.

Performing vessels to be in every way suitable to load, carry and discharge cargo of bauxite. Performing vessels to be P&I Club covered with P&I Club being member of the international group of P&I Clubs and H&M insured throughout the whole voyage, performing vessels to be fully ITF fitted. Prior to loading the performing vessel's holds to be tendered free of rust and scale, washed, swept and clean to Shippers' satisfaction for the cargo of bauxite in bulk.

Performing vessels to be suitable for grab discharge and to be clear of sweat battens. Owners confirm that performing vessels will have no center line beams/bulkheads (girder), no fittings or other obstructions in holds. No cargo to be loaded in deeptanks, bunkers or other compartments not easily accessible to grabs. Any extra expenses or time lost in excess of normal grab discharge to be for owners' account. Deeptanks, tunnels and all other projections within vsl's holds are to be protected against damage by grabs, failing which owners/vsl to be responsible for any damage to vsl's holds.

Owners confirm that they have checked loading and discharging ports and have satisfied themselves that performing vessels will be suitable in all respects for this trade in these ports.

## Clause 29. Arbitration

The Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced. The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and give notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator. In cases where neither the claim nor any counterclaim exceeds the sum of US$ 50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time, when the arbitration proceedings are commenced.

## Clause 30. Extra Insurance

Extra insurance, if any, due vessel's age/class/ownership to be for Charterers' account.

## Clause 31. Demurrage and Despatch

Demurrage and despatch at port of loading and discharging to be settled directly between Shipowners and Charterers as per time sheets established on the basis of Statements of Facts and N.O.R. co-signed by the representatives of shippers and receivers. It is to be settled within 20 days upon receipt of all documents as per the Charter Party. Despatch at half demurrage rate to be paid by Owners for lay-time saved at loading and discharging ports.

## Clause 32. I.S.M.

During the currency of this Charter Party the Owners shall procure that the vessels and the "Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant document of compliance (DOC) and Safety Management Certificate (SMC) to the Charterers, except as otherwise provided in this Charter Party. Any loss, damage, expense or delay caused by failure on the part of the Owners or the "Company" to comply with the ISM Code shall be for the Owners' account.

### Clause 33. Ice Clause

Under no circumstances the vessel shall be requested to force ice, but to follow ice-breaker only in broken ice.

### Clause 34. Bills of Lading

In the event when original Bill(s) of Lading is not available at discharging port, Owners to allow discharging against Charterers' corporate Letter of Indemnity issued in accordance with Owners' P&I Club wording. The original Bill(s) of Lading to be surrendered as soon as possible, but not later than 15 days after completion of discharging. Letter of Indemnity to be returned to Charterers or to be declared as null and void by Owners.

### Clause 35. Nomination

Shipments fairly evenly spread within 2006.

Charterers to nominate each shipment latest 30 days prior to first day of respective lay/can, which to have 10 days spread. Intended performing vessel to be nominated by Owners latest 15 days prior to first day of Charterers' lay/can and to be approved by Charterers within 48 hours after nomination.

Owners have the right to substitute intended vessel latest 10 days prior to her ETA to loading port. Final performing vessel to load approximately the same quantity of cargo as intended performer and to be approved by Charterers within 48 hours after nomination. Owners to answer Shippers' questionnaire with nomination of performing vessel.

### Clause 36. Income Taxes

Owners shall pay any income or like tax and in particular but without limitation any tax payable under Division 12 of Part III of the Income Tax Assessment Act 1936-1976 of the Commonwealth of Australia or under any modification or re-enactment of that Division.

### Clause 37. Stevedore damage

Stevedore damage shall be settled directly between Owners and stevedores without any liability to Charterers, but Charterers to do their utmost to assist Owners in settling of said damages, if notified within 24 hours of occurrence. If damages affect vessel's seaworthiness, same to be repaired before sailing and time for repairs not to count as laytime or time on demurrage.

### Clause 38. I.S.P.S

(A)  (i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(B) (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and any other information the Owners require to comply with the ISPS Code.

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account and any delay caused by such failure shall be compensated at the demurrage rate.

(C) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on laytime or demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage has ceased to count, it shall be compensated by the Charterers at the demurrage rate.

(D) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(E) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

**Clause 39. Confidentiality**

Terms and conditions of this Charter Party to be kept strictly private and confidential.

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(B) (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and any other information the Owners require to comply with the ISPS Code.
(ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account and any delay caused by such failure shall be compensated at the demurrage rate.

(C) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:
(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.
(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on laytime or demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage has ceased to count, it shall be compensated by the Charterers at the demurrage rate.

(D) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(E) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

## Clause 39. Confidentiality

Terms and conditions of this Charter Party to be kept strictly private and confidential.